**Bernard GREENSPAN, Plaintiff,**

**v.**

**Ann KLEIN, Individually and as Commissioner, Department of Institutions and Agencies, State of New Jersey, and Gerald J. Reilly, Individually and as Director, Division of Medical Assistance and Health Services, jointly, severally and in the alternative, Defendants.**

Civ. A. No. 76–439.

United States District Court, D. New Jersey.

Dec. 23, 1977.

Karl Asch, Elson P. Kendall, Elizabeth, N. J., for plaintiff.

William F. Hyland, Atty. Gen. of N. J. by Robert E. Popkin, Deputy Atty. Gen., Trenton, N. J., for defendants.

## OPINION

Before WEIS, Circuit Judge, and FISHER and STERN, District Judges.

PER CURIAM.

Plaintiff, a physician provider, was suspended from the Medical Assistance Program of the State of New Jersey on the basis of an allegation of fraud. He brings this suit, seeking, among other things, a temporary and permanent injunction to restore him to the program. Plaintiff also asks this Court to declare Sections 10:49–1.-18 and 10:49–63 of the New Jersey Administrative Code, N.J.A.C. 10:49–1.18, and 10:49–63, and the New Jersey Statutes 30:4D–1 et seq., N.J.S.A. 30:4D–1 et seq., unconstitutional.

The medicaid program of the State of New Jersey is state-administered and federally and state-funded. It is designed to assist certain indigent recipients with medical expenses. This program is administered by the Commissioner of the Department of Human Services through the Director of the Division of Medical Assistance and Health Services.

The Division of Medical Assistance conducted an investigation of the medicaid billing practices of the plaintiff. The Division alleges that he had been submitting claims to the New Jersey Medicaid Program and receiving payment therefor for treatment which was either not rendered or was rendered by a nurse without his direct, personal supervision. As a result of the investigation the Director of the Division temporarily suspended plaintiff from participation in the medicaid program pending the outcome of an administrative hearing, should one be requested. The notice of suspension advised Greenspan that the suspension was "based upon a review conducted by this Division which indicates that you submitted claims and received payment for services not rendered by you." Additionally, plaintiff was advised that if a hearing was to be requested, the Director had to be notified no later than twenty days from the date of receipt of the notice of his suspension.

Rather than requesting a hearing, plaintiff filed a complaint and obtained an order to show cause from this Court on March 10, 1976. A temporary restraining order was denied. The order to show cause directed defendants to advance its reasons why a motion for a preliminary injunction should not be granted as well as reinstatement of the plaintiff as a physician provider. The motion for a preliminary injunction was denied and it was pointed out to plaintiff that an application of that nature required the convening of a three-judge court. See 28 U.S.C. § 2281. Upon appeal the Court of Appeals vacated this order, remanded the case to this Court and directed that a three-judge court be convened, despite the fact that plaintiff did not make such a request in his pleadings. See, Greenspan v. Klein, 550 F.2d 856 (3rd Cir. 1977). This three-judge court was thereafter convened.

The sole question presented is whether or not the statutes and the provisions of the administrative code involved are unconstitutional insofar as they deprive plaintiff of a pretermination hearing. N.J.A.C. 10:49–6.3(b) provides that, "[t]he Director may suspend any provider of service prior to any hearing when, in his opinion, such action is necessary to protect the public welfare and the interests of the Medical Assistance Program."

Plaintiff would appear to be in a contractual relationship with the State of New Jersey and the agencies administering this program, and thus it would seem that he has at least some property interest in his continuing participation in the medicaid program. The question which must be answered is whether or not he is entitled to a pretermination hearing or a post termination hearing. The time and nature of the hearing requires the weighing of the individual interest and the public interest. Case v. Weinberger, 523 F.2d 602 (2nd Cir. 1975). Due process, in a situation of this nature, does not require a hearing at the initial stage or at any specific point in the proceedings so long as a requisite hearing is held at some point. See Dixon v. Love, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977).

Plaintiff, in support of his position, directs our attention to *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969). That case, however, held that welfare recipients receiving financial aid under New York State's general Home Relief Program could not be terminated without a pretermination hearing because the discontinuance of welfare benefits prior to hearing endangered their very survival. As the court stated in *Goldberg v. Kelly, supra*, at 264, 90 S.Ct. at 1018:

> [T]hus the crucial factor in this context—a factor not present in the case of the blacklisted government contractor, the discharged government employee, the tax-payer denied a tax exemption, or virtually anyone else whose government entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.

■ In the present case we note that the action of the Director of the Medicaid Program did not terminate the plaintiff's right to practice medicine. The Director simply terminated his right to participate in the program as a provider pending the outcome of a hearing.

"[T]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). We are of the view that the interest of the State of New Jersey in this program and in the integrity of its administration is vital. While it must be conceded that Dr. Greenspan is under a constraint which obviously will bring about some financial loss on his part, this interest cannot compete with the overriding public interest involved in the proper administration of the medicaid program in New Jersey. There is

no "brutal need" as was present in *Goldberg v. Kelly, supra*, and other cases such as *Hathaway v. Matthews*, 546 F.2d 227 (7th Cir. 1976); *Klein v. Matthews*, 430 F.Supp. 1004 (D.N.J.1976); *Ross v. Wisconsin Dept. of Health and Social Services*, 369 F.Supp. 50 (E.D.Wisc.1973). Rather, as in *Russi v. Weinberger*, 373 F.Supp. 1349 (E.D.Va. 1974), we are dealing with a dispute between a practicing physician and the state government, which arose out of the alleged conduct of the physician.

We think it is clear that the statutes and the provisions of the administrative code under attack are constitutional. The opportunity for a prompt post termination hearing satisfies the requirements of due process. Accordingly, the motions for a preliminary and permanent injunction are denied.

The constitutionality of the statute and regulations having been resolved, the three-judge court is hereby dissolved. All remaining issues in the case should be presented to Judge Fisher.

CLARKSON S. FISHER, District Judge (concurring and dissenting).

Although I agree with the majority that the statutes and regulations are constitutional, in my view this is an appropriate case for abstention. The principles enunciated in the landmark abstention cases, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), do not need repetition here. These principles have been given even wider application, especially in the recent cases of *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), and *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

In *Trainor v. Hernandez, supra*, a civil action had been brought against Hernandez in the state court by the Director of the Illinois Department of Public Aid seeking the return of welfare payments alleged to have been wrongfully received by Hernandez. As part of that action, a writ of attachment was issued and executed against the property of Hernandez without

notice or a hearing pursuant to the Illinois Attachment Act. Instead of contesting the writ of attachment in that action, Hernandez filed suit in the Federal District Court alleging that the Attachment Act was unconstitutional. A three-judge court agreed with the plaintiff and issued an injunction directing the return of the attached property. The Supreme Court reversed, holding that the principles of *Younger* and *Huffman* should have been applied by the District Court. The Court explained that

[n]o extraordinary circumstances warranting equitable relief were present here. There is no suggestion that the pending state action was brought in bad faith or for the purpose of harassing appellees. It is urged that this case comes within the exception that we said in *Younger* [*Younger v. Harris*, 401 U.S. 37, 97 S.Ct. 746, 27 L.Ed.2d 669] might exist where a state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 401 U.S. at 53–54, 91 S.Ct. at 755, (quoting *Watson v. Buck*, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)). Even if such a finding was made below, which we doubt, (see *supra* at 1916), it would not have been warranted in light of our cases. Compare *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) with *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, [94 S.Ct. 1895, 40 L.Ed.2d 406] (1974).

*Id.* 97 S.Ct. at 1919.

In *Juidice v. Vail, supra*, the District Court had held unconstitutional those sections of the judiciary law of the State of New York which concerned contempt proceedings to enforce civil judgments. Reversing that decision, the Supreme Court again emphasized the importance of the doctrine of comity. There the Court held that

[w]hether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is the federal court interference with the state's contempt process is "an offense to the state's interest . . . likely to be every bit as great as it would be were this a criminal proceeding," *Huffman, supra*, 420 U.S. at 604, 95 S.Ct. 1208. Moreover, such interference with the contempt process not only "unduly interfere[s] with the legitimate activities of the Stat[e]," *Younger, supra*, 401 U.S. at 44, 91 S.Ct. at 750—but also "can readily be interpreted 'as reflecting negatively upon the state court's ability to enforce constitutional principles.'" *Huffman, supra*, 420 U.S. at 604, 95 S.Ct. at 1208.

*Id.* 97 S.Ct. at 1217–1218 (footnotes omitted).

Applying these concepts to the case at hand, the following facts should be noted. Following plaintiff's suspension and the filing of this law suit, defendants offered plaintiff an immediate hearing to be conducted by a hearing examiner completely unconnected with state government. At that point, plaintiff could have immediately tested the constitutionality of the statutes and regulations here under attack by taking advantage of a variety of state procedures. He could have requested an administrative hearing under N.J.S.A. 30:4D–7(f), made an interlocutory motion to lift the suspension and then made an application to the Appellate Division of the Superior Court of New Jersey under R. 2:5–6(a) of the New Jersey Court Rules, 1969 if that motion were denied. Alternatively, plaintiff could have participated in the hearing afforded to him by N.J.S.A. 30:4D–7(f) and if aggrieved therein appealed that decision to the aforesaid intermediate appeals court. Finally, a direct application could have been filed with the Appellate Division of the New Jersey Superior Court for a decision from that forum as to the validity of the procedure of which he now complains. It can be seen that at that point there were potential avenues of relief available to plaintiff which, if pursued, would have culminated in either administrative or judicial litigation between the same parties to the action herein.

The plaintiff in this case clearly had an opportunity to present any federal claims he might have in the state proceeding.

This is all that is required. *See, Juidice v. Vail, supra* 97 S.Ct. at 1218. Furthermore, statute and the regulations here under attack are clearly susceptible of a construction by the state judiciary obviating the necessity for a federal court to decide the constitutional issue presented herein. *See, Bellotti v. Baird*, 428 U.S. 132, 146–51, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976).[1]

It must also be taken into consideration that if we stay our hand here it will accord proper respect for a state function under the principle of comity. Keeping in mind that the country is made up of separate state governments, the union and the national government will fare best if the states and their institutions are left free to perform their separate functions. *Huffman v. Pursue, Ltd., supra.*[2]

Finally, emphasis should be afforded the fact that the New Jersey Medical Assistance Program was designed to implement a statutory and regulatory scheme to assist the poor to obtain quality medical care and enable the State to receive benefits for medical assistance provided by the Federal Social Security Act. *See*, 42 U.S.C. § 301 *et seq.* Thus, the State of New Jersey is vitally interested in administering this program and also in insuring the integrity of both the program itself and the program participants such as the recipient and the provider. New Jersey, which has a vital interest in the pertinent procedures so as to vindicate important state policies and safeguard the fiscal integrity of the Medical Assistance Program, has taken action with respect to the allegedly fraudulent activities of a medicaid program provider. The courts of that State, therefore, should have the opportunity to decide the constitutional issues raised by this litigation. For these reasons, I believe that the determination that we are asked to make herein should

best be left to the courts of the State of New Jersey under the principles of comity, federalism and traditional equity jurisprudence. I would grant the motion to dismiss.

STERN, District Judge (concurring).

I am in complete agreement with the *per curiam* opinion and I write only on the issue of abstention reached by Judge Fisher. I cannot see why we should consider staying our hands in this matter and defer to some state tribunal before which nothing now pends.

The plaintiff has been suspended, and the fact that he "could have immediately tested the constitutionality of the statutes and regulations here under attack by taking advantage of a variety of state procedures" is for me beside the point. Of course, the plaintiff *could* have sued in the state court, but he chose not to. If the mere existence of a state forum in which a private individual may sue the state were to preclude the individual from suing in federal court, no one could ever sue a state in federal court. The doctrine of *Younger v. Harris* was not designed to force plaintiffs to *elect* state rather than federal forums; it was designed to protect the jurisdiction of state courts where a plaintiff seeks to litigate identical issues in federal courts.

Furthermore, the interest with which the State of New Jersey views the outcome of the pending lawsuit hardly seems a reason for requiring the plaintiff to choose a state rather than a federal judge to decide the issues when nothing is pending before the courts of either jurisdiction. I do not know how to measure the state's interest in all of the varied litigations in which it appears in state and federal courts, but even if such a measure could be devised, I fail to see how the degree of state interest in the outcome has any relevance to the forum which is to render the decision.

---

1. *See also Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976).

2. It is interesting to note earlier cases where only equitable doctrines were applied. For instance in *Massachusetts State Grange v. Benton*, 272 U.S. 525, 527 [47 S.Ct. 189, 190, 71 L.Ed. 387] (1926), the Court through Mr. Justice Holmes stated that

    [t]he Court below found no inconsistency between the two Acts and we have seen no

sufficient reason for differing from it upon that point. But it also went on the important rule, which we desire to emphasize, *that no injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable harm.* (Emphasis added).

Extension of the *Younger* doctrine to the situation here would turn comity on its head. By enactment of the Judiciary Act of 1875, 18 Stat. 470, Congress conferred federal question jurisdiction on the lower federal courts. Those courts " 'ceased to be restricted tribunals of fair dealing between citizens of different states and became the *primary* and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States.' F. Frankfurter & J. Landis, the Business of the Supreme Court 65 (1928)." *Steffel v. Thompson*, 415 U.S. 452, 464 [94 S.Ct. 1209, 1218, 39 L.Ed.2d 505] (1974).

Nothing in *Juidice v. Vail* or *Trainor v. Hernandez* compels abstention. In both of these cases, the federal plaintiff was already embroiled in a state court action prior to instituting federal suit. In sum, I stand by my dissenting opinion in *Rite Aid Corp. v. Bd. of Pharmacy of the State of N. J.*, 421 F.Supp. 1161, 1180–1181 (D.N.J.1976).

Once it is ascertained that no state proceeding is pending, no doctrine of law or consideration of comity requires plaintiffs to choose a state court rather than a federal court in which to enforce federal rights. The majority reviews a growing body of law in the lower federal courts which suggests that the application of the *Younger-Huffman* rule rests on some "strong and peculiar relationship to, or interest in, the existing state proceedings" on the part of a state. *Ante*, at 1166. In finding this questionable addition to the *Younger* doctrine inapplicable to the facts of this case, though purporting to decline to decide whether the "strong state interest" approach is correct, the Court overlooks the fundamental fact which renders *Younger-Huffman* wholly inapplicable here: there is no pending state proceeding of any kind. Cf. *In re Grand Jury Impaneled January 21, 1975*, 541 F.2d 373 (3rd Cir. 1976). If we were to refuse to hear plaintiffs here, we would be sending them away to begin a new suit elsewhere.

In my view, the applicability of the equitable abstention doctrine does not depend upon such labels as civil, criminal, quasi-criminal or "in aid of and closely related to." Nor do I believe that the Supreme Court would decide such an issue on the basis of some generalized analysis of the "strength" of a state's interest in the particular statute under challenge. The majority's own caveat, *ante*, at 1171, that though it does not "suggest or intimate that New Jersey is unconcerned with the proper regulation of the practice of pharmacy," the state's concern is somehow not "strong" enough to warrant our deference, makes clear the deficiency of such an approach. A state is obviously "strongly" concerned, whatever that term may mean, whenever it has enacted legislation. That a state is "concerned," in this sense, with the outcome of the litigation to which it is a party does not give it the right to compel that litigation to proceed only within its own courts.

It is my view, rather, that the basis of the *Younger* doctrine lies in the conception of "Our Federalism" enunciated by Mr. Justice Black in that seminal case. 401 U.S. at 44–45, 91 S.Ct. 746. *Younger* and its progeny are an effort to reconcile the fundamental paradox of two parallel court systems exercising overlapping jurisdiction within the same time and space. The doctrine of equitable abstention is in reality a mere accommodation, designed to smooth the functioning of the judicial branches of both the national and state governments in a federal system. It demands that a federal court stay its hand only when a state court has already assumed jurisdiction over the controversy between the parties. I view the purpose of the doctrine to be the avoidance of needless embarrassment to the state courts from federal litigation which, by virtue of the Supremacy Clause, could cause federal courts effectively to divest state courts of jurisdiction over prior lawsuits.

In the absence of a pending lawsuit, however, I cannot see why a federal plaintiff should be denied a federal forum in which to contend that his federal rights have been violated by state action. Such a conclusion implies no criticism of

the state courts. On the contrary, there is no question that the state judiciary is as fully capable as the federal to apply the federal constitution to enactments of the state legislature, *see, e. g., Stone v. Powell*, 465 U.S. 465, 493 n. 35, 96 S.Ct. 3037, 3051 n. 35, 49 L.Ed.2d 1067 (1976). That alone, however, is no reason for federal courts to decline to exercise jurisdiction over federal questions once a plaintiff has elected to seek his relief here. In the absence of a pending state proceeding raising the same claim between the same litigants, we ought not to send him to the state courts merely because the state has an "interest" in the outcome of the litigation. *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). *Cf. Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Cottrell v. Virginia Electric & Power Co.*, 363 F.Supp. 692, 696 (E.D.Va.1973). A state has an interest whenever its statutes are challenged as violative of federal law. That interest, no matter how strong, does not give the state the right to have the issue decided in the forum of its choice.[1]

[1] In the largest sense, the State's argument turns comity on its head. Why should the State be concerned whether this litigation proceeds here or elsewhere? If the courts of both sovereignties are equally competent to vindicate federal rights, are they not equally competent to vindicate state interests as well? In the absence of a pending state lawsuit, what "interest" does the State have in plaintiffs' choice of forum?