**Mark PELINI, Plaintiff,**

v.

**Barbara BLUM, individually, and as Commissioner of Social Services of the State of New York, Defendant.**

No. 82 Civ. 8447.

United States District Court, S.D. New York.

Jan. 6, 1983.
On Motion for Summary Judgment
Jan. 28, 1983.

Robert Abrams, N.Y. State Atty. Gen., New York City, David Glasel, counsel, N.Y. State Dept. of Social Services, Albany, N.Y. by Judith A. Gordon, Mary Fisher Bernet, Asst. Attys. Gen., Frederica A. Jaret, Associate Atty., N.Y. State Dept. of Social Services, New York City, for defendant.

Jerome I. Sager, New York City, for plaintiff.

## MEMORANDUM AND ORDER

SOFAER, District Judge:

Plaintiff, a practicing physician, has moved for a preliminary injunction that would prevent New York's Commissioner of Social Services from withholding Medicaid reimbursements to plaintiff pending the fi-

nal determination of this action. The underlying complaint seeks a declaration that 18 N.Y.C.R.R. §§ 515.7 and 515.3(f) are constitutionally invalid because they permit withholding of Medicaid payments due plaintiff without a prior hearing, an injunction against enforcement of the regulations, and the costs including attorneys' fees of pursuing the action. A hearing was held on December 21, 1982 at which the Court reserved judgment on the motion for a preliminary injunction. The motion is hereby denied.

At some time prior to November 24, 1982 the Bureau of Medicaid Fraud & Abuse of the State Department of Social Services conducted an inspection of plaintiff's office and files. According to the uncontroverted representations of defense counsel at oral argument, the inspection team included nurses and was under the supervision of an accountant. The Department of Social Services' detailed official notice to plaintiff asserts that the team examined a statistically valid sample of 100 out of 3,327 cases for the period November 1, 1977 to December 31, 1979. Disallowances of $2,187.26 were made in the sample cases because of failures to produce patient charts (36 transactions), failures to document service (193 transactions), reductions for out-of-speciality billings (247 transactions), and improper use of procedure codes (7 transactions). The Department of Social Services then projected that sample disallowance to the universe of payments, resulting in a restitution order of $72,670.33, plus interest, or $78,847.32 as of November 24, 1982. See 18 N.Y.C.R.R. § 515.3(d)(1). The Department also concluded on the basis of the inspection, not limited to the time period for which files were examined, that the quality of care provided by plaintiff was so deficient as to warrant his permanent disqualification from participation in the State's medical assistance program. See 18 N.Y.C. R.R. § 515.3(b)(1)(i). The quality-of-care deficiencies found by the Bureau were:

1. There is a total absence of clinical detail in recording the chief complaint and present illness.

2. There is a uniform absence of documentation relative to past history, social history, family history and systems review.

3. Physical examinations are limited and incomplete. There is often a pattern of successive clinical visits without documentation of even a limited physical examination.

4. Laboratory data are infrequently requested.

5. EKG's are not interpreted.

6. There are frequent instances of patient visits exceeding the ordinary standards of medical practice.

7. Medications are listed in illegible form without dosage or frequency.

8. There are instances of injudicious and unjustifiable prescriptions for medications.

In re Mark Pelini, M.D., Notification of Intent to Take Administrative Action, MMIS # 00151886 (Nov. 24, 1982) ¶ 2B.

The Department's official notice informed plaintiff of his right to a hearing under 18 N.Y.C.R.R. § 515.8. The notice specifically pointed out that a timely request for hearing would stay both the restitution and permanent disqualification orders. But the Bureau also decided to take the following "interim action" pursuant to 18 N.Y.C.R.R. §§ 515.7 and 515.3(f):

Effective the date of this notice, 100% of payments shall be withheld from your pending and subsequently received claims until $78,847.32 has been collected. This withholding of payment will continue in effect, regardless of a request for a hearing until a final administrative determination has been made. If you neither make the appropriate restitution nor request a hearing within 21 days from the date of this notice, any payments which may be due you for services rendered will be retained and credited to your account until the total claimed has been recovered. If you request a hearing and are successful therein, the payments which

have been withheld will be released to you.

*Id.* at 5.

## I.

Plaintiff has not established that he will be irreparably injured by the defendant's interim action. The amount of plaintiff's damages in the form of withheld Medicaid payments is readily ascertainable, so he will be able to obtain relief if the interim suspension is found improper. Plaintiff has alleged that his practice will be destroyed by the state's action, but even if this claim could be established, damages for these effects (to the extent not avoidable by plaintiff) would be recoverable. *See, e.g., Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356, 1359 (2d Cir.1976). Although plaintiff's uncontroverted affidavit shows that his current medical practice consists almost entirely of Medicaid patients in a low-income neighborhood, Affidavit of Dr. Mark Pelini (Dec. 20, 1982) ¶ 5, plaintiff has presented no evidence as to his capacity to hold on long enough to obtain a final determination from the state.

## II.

In any event, plaintiff has virtually no chance of succeeding on the merits. He clearly has a property interest in the Medicaid payments he claims already to have earned. Insofar as the 100% withholding of payments for future medical services amounts to a temporary suspension from the Medicaid program, plaintiff may also have a property interest in future payments. *See Case v. Weinberger,* 523 F.2d 602, 606 (2d Cir.1975); *Greenspan v. Klein,* 442 F.Supp. 860, 861 (D.N.J.1977). *But see Sigety v. Ingraham,* 29 N.Y.2d 110, 115–16, 272 N.E.2d 524, 324 N.Y.S.2d 10, 14 (1971). Such property interests may not be permanently denied without a hearing, at which plaintiff would at least be able to challenge the evidence against him and to introduce evidence of his own. But the withholding of payments pending a hearing is clearly permissible under existing law, because it is based on a reasonably thorough investigative procedure, because the State's interest in providing adequate medical treatment to the poor is substantial, and because a reasonably prompt hearing is available to challenge the Department's determinations. *See Case v. Weinberger, supra; Greenspan v. Klein, supra; see also Greenwald v. Whalen,* 609 F.2d 665 (2d Cir.1979).

In this case a report was prepared on the basis of studies and projections that appear reasonable. The Department of Social Services made specific and extensive findings that, if supported, amply justify the actions proposed. The State has a strong interest, once having made these findings, in recovering as effectively as possible the funds improperly obtained by the doctor involved, and in terminating as quickly as possible the doctor's future participation in the Medicaid program. The State in fact has a special responsibility to prevent doctors whose practices the State has found are seriously deficient from providing care to the poor. "While it must be conceded that Dr. [Pelini] is under a constraint which obviously will bring about some financial loss on his part, this interest cannot compete with the overriding public interest involved in the proper administration of the Medicaid program in [New York]." *Greenspan,* 442 F.Supp. at 862.

Plaintiff concedes that he will be given a full hearing, but claims it will be months before it is held. In fact, plaintiff could have sought an expedited hearing, and defendant's counsel has represented that such a request would lead to a hearing within about one month. Plaintiff did not, however, seek to expedite his hearing. Rather, plaintiff has sought to prevent the State from obtaining interim relief, or to limit that relief to 10% reductions in his payments. Letter from Jerome I. Sager to the Court (Dec. 30, 1982). In that connection, plaintiff has failed to show how a 10% reduction would secure the State's claim against him. The State may never recoup the full amount due to it if only 10% is deducted, since plaintiff's right to reimbursements will end if he is finally found ineligible to provide Medicaid services.

Inasmuch as defendant has not submitted affidavits which might remove all issues of

fact from this case, the Court will not grant defendant summary judgment on the underlying complaint. Defendant is hereby ordered to move for summary judgment, on proper papers, within twenty days of this Order. Meanwhile, the issues in this action might be most efficaciously resolved by defendant's giving plaintiff a full hearing as soon as possible. The request for a preliminary injunction is denied.

SO ORDERED.

## ON MOTION FOR SUMMARY JUDGMENT

■ The Court denied plaintiff's motion for a preliminary injunction in a memorandum and order dated January 6, 1983. At that time the Court also directed defendant to submit affidavits and move for summary judgment. Defendant has submitted an affidavit and a motion to dismiss which the Court will treat as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). Plaintiff has not submitted papers in opposition to this motion.

Defendant's affidavit amply supports the factual premises on which the denial of the motion for a preliminary injunction was based. *See* Affidavit of Ernest Matarusso, Director of Medicaid Fraud and Abuse Bureau (January 10, 1983). Defendant's motion for summary judgment is granted.

SO ORDERED.