Montasham Ali KASHIMIRI, individually and doing business as Sunnyside Drugs, KZR Pharmacy Inc., Qazi Drugs Inc., 288 Grand Street Pharmacy Inc., Seigel Street Pharmacy Inc., Ampak Drugs Inc., West Side Pharmaceutical Inc., Super Star Drug Store Ltd., Shan Pharmacy Inc., Boroad Pharmacy Inc. and 200 Richmond Ave. MK Pharmacy Inc., Plaintiffs,

v.

Cesar A. PERALES, individually and as Commissioner of the New York State Department of Social Services, Defendant.

No. 84 Civ. 7680 (SWK).

United States District Court, S.D. New York.

Nov. 21, 1984.

Jerome I. Sager, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. N.Y., New York City by Gerald Slotnik, Asst. Atty. Gen., for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The above-captioned action is before this Court upon plaintiffs' motion for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is denied.

## BACKGROUND

Plaintiff Montasham Ali Kashimiri is a resident of New York State who apparently owns and/or operates twelve pharmacies located in Kings, New York, Queens, and Richmond Counties.[1] The other ten plain-

---

1. It is not clear what relationship Kashimiri has with each of the pharmacies. None of plaintiffs' papers herein (the complaint, the memoranda in support of the motion, the affidavits in support of the motion) details the relationship.

Defendant asserts "upon information and belief" that Kashimiri "is the owner and/or agent" of these pharmacies (Affidavit of D. Steve Rahmas, ¶ 10), and the Court will take this to be true.

tiffs [2] are domestic corporations that operate eleven of those pharmacies.[3] Each of the plaintiffs is enrolled in the New York State Medicaid Program as a provider of Medicaid services at its respective pharmacies.[4] Plaintiffs derive approximately 90% of their gross revenues from the provision of Medicaid services. Affidavit of Montasham Ali Kashimiri, ¶ 3 ("Kashimiri Aff.").

Defendant Perales is the Commissioner of the New York State Department of Social Services ("the Department"). As such, he has the primary responsibility for overseeing the various functions and duties of the Department (N.Y.Soc.Serv.Law §§ 17, 34 (52A McKinney 1983)), including the New York State Medicaid Program (N.Y. Soc.Serv.Law § 363 *et seq.*).

The Department conducted an audit of the records of the pharmacy operated by plaintiff KZR Pharmacy Inc. ("KZR") at 1374 Broadway in Kings County (Provider No. 00350252) for the period January, 1982, through March 31, 1984.[5] Affidavit of D. Steve Rahmas, ¶ 7 ("Rahmas Aff."). Based upon a preliminary review of the records of that pharmacy, the Department determined that that provider was making claims for payment for unfurnished, unnecessary, or inappropriate care, services, or supplies, and that the provider may have been making false statements relating to such claims. *Id.* The Department estimated, based upon the preliminary findings, that it is entitled to recover approximately $140,000 for overpayments to that provider for the period of the audit. *Id.*

Based upon those preliminary findings, the Department decided to audit that provider's records for the period subsequent to March 31, 1984. Rahmas Aff., ¶ 8. On or about August 20, 1984, the Department also decided to defer payments to that provider pending pre-audit, review, and verification. Rahmas Aff., ¶¶ 12, 15.

The Department further decided, based on Kashimiri's relationship to all the provider pharmacies, that the practices evidenced by KZR at 1374 Broadway were likely to be found pervasive for all twelve provider pharmacies. Rahmas Aff., ¶¶ 10, 11. Consequently, on or about August 20, 1984, the Department decided to defer payments to the other eleven pharmacies pending pre-audit, review, and verification. Rahmas Aff., ¶¶ 12, 15.

No notice of the decision to pre-audit plaintiffs' claims was given at that time. Plaintiffs' inquired into the reason they had not received any payments on their claims. Kashimiri Aff., ¶ 5. They were advised of the apparent erroneous billing by KZR, and do not deny that the Department's preliminary findings are correct.[6] *Id.* Finally, on or about October 9, 11, and 16, 1984, the Department issued written Orders for Pre-Audit, pursuant to 18 N.Y.C.R.R. §§ 540.11 and 540.8(a)(1), the general provisions of 18 N.Y.C.R.R. § 540, and N.Y.Soc.Serv.Law §§ 20, 34, 363–a, and 367–b (Rahmas Aff., ¶ 13, Exh. I; Exh. A to Complaint), which confirmed the August 20 determination to pre-audit plaintiffs' claims prior to payment, and effected notice upon plaintiffs of that determination. By their own terms, those Orders for Pre-Audit continue in effect for a period not to exceed ninety (90) days from August 20, 1984. Rahmas Aff., ¶ 14, Exh. I, Exh. A to Complaint.

As of October 29, 1984, the Department had withheld approximately $55,806.95 in claims from KZR at 1374 Broadway (Rahmas Aff., ¶ 9) and approximately $7,015.24 in claims from plaintiff Boroad Pharmacy

---

**2.** KZR Pharmacy Inc.; Qazi Drugs Inc.; 288 Grand Street Pharmacy Inc.; Seigel Street Pharmacy Inc.; Ampak Drugs Inc.; West Side Pharmaceutical Inc.; Super Star Drug Store Ltd.; Shan Pharmacy Inc.; Boroad Pharmacy Inc.; and 200 Richmond Ave. MK Pharmacy Inc.

**3.** KZR Pharmacy Inc. operates two pharmacies.

**4.** KZR Pharmacy Inc. has one provider number for each of the pharmacies it operates.

**5.** Plaintiffs apparently deny that such audit was ever conducted (Affidavit of Jerome I. Sager, ¶ 6), or, at least, ever properly conducted (*id.,* ¶ 3).

**6.** Nor do they admit that those findings are accurate.

Inc. (*id.*, ¶ 28) in addition to sums not listed for the other plaintiff providers.[7] It appears that as of this date none of plaintiffs' claims have been pre-audited as yet. Therefore, none of plaintiffs' claims since August 20 have been either verified or rejected.

Plaintiffs brought this action, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), seeking a declaration that 18 N.Y.C.R.R. § 540 is unconstitutional on its face and as applied ·and enjoining the enforcement of said provisions at least insofar as they authorize the suspension of payments to plaintiffs. Plaintiffs then moved by Order to Show Cause dated October 24, 1984, for a preliminary injunction staying the suspension of payments to plaintiffs pending the determination of this action.[8] That motion is currently before the Court.

## DISCUSSION

The standards governing the issuance of a preliminary injunction are well established in this Circuit. A preliminary injunction will issue only upon

a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2nd Cir.1979); *see also, e.g., Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2nd Cir.1979).

7. The Complaint alleges that a total of in excess of $240,000 had been withheld from plaintiffs as of October 22, 1984.

8. Plaintiffs' application for· a temporary restraining order temporarily granting that relief was denied on October 24.

9. The Court recognizes that it is unusual to dispose of motions for a preliminary injunction without an evidentiary hearing. *See, e.g., Forts· v. Ward*, 566 F.2d 849 (2nd Cir.1977). The Court, however, expected that the hearing on November 5 would be an evidentiary hearing. The parties chose not to offer testimony at that

Based upon the affidavits and memoranda submitted, and upon counsel's argument at the hearing held herein on November 9, 1984,[9] the Court finds that plaintiffs have not made the required showing.

Plaintiffs argue that they will suffer irreparable harm if no injunction issues because they will go out of business if they do not continue receiving payment on their claims immediately. Plaintiffs' claim that financial ruin is imminent seems meritorious in light of the fact that some of the plaintiffs have already been forced out of business by foreclosures and eviction proceedings. While plaintiffs therefore appear to have made the required showing of irreparable harm, that is only one part of the showing they must make. Plaintiffs have utterly failed to show either a likelihood of success on the merits *or* a fair ground for litigation and a balance of hardships decidedly in their favor.

Plaintiffs contend that 18 N.Y.C.R.R. § 540 is a violation of the Due Process Clause of the fourteenth amendment and is unconstitutional, both on its face and as applied, because it permits the *"de facto suspension"* of payments without either a pretermination hearing or a prompt posttermination hearing. In so doing, plaintiffs' mischaracterize the effect of defendants' actions and essentially place the cart before the horse in addressing the nature of the process due them.

The Due Process Clause of the fourteenth amendment forbids the State from depriving any person of life, liberty, or property without due process of law. The "property interests" that that clause pro-

hearing and should not be heard to cry now or at any future date that they were not provided an evidentiary hearing. *See Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 n. 11 (2nd Cir.1970); *Sugarhill Records Ltd. v. Motown Record Corp.*, 570 F.Supp. 1217, 1221–22 (S.D.N.Y.1983). Moreover, this Court finds that there are no rélevant issues of fact warranting an evidentiary hearing herein because the determination of this motion is based upon undisputed facts·and upon conclusions of law. *See Herbert Rosenthal Jewelry Corp. v. Grossbardt*, 428 F.2d 551 (2nd Cir.1970).

tects, however, are not defined in, or by, the Constitution. *See Goss v. Lopez*, 419 U.S. 565, 572, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975). Those "property interests" are " 'created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Id.* at 572–73, 95 S.Ct. at 735 (*quoting Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Accordingly, this Court must ascertain what property rights plaintiffs have under state law before it can determine whether plaintiffs have been deprived of them without due process.

Plaintiffs baldly assert that they have "property interests in their licenses and the income derived therefrom." To be sure, plaintiffs do have a property interest in their licenses which would preclude their *termination* without due process of law. *See Bowens v. N.C. Dep't of Human Resources*, 710 F.2d 1015 (4th Cir.1983); *Case v. Weinberger*, 523 F.2d 602 (2d Cir.1975); *Pelini v. Blum*, 555 F.Supp. 181 (S.D.N.Y. 1983). This, however, is because under New York law, plaintiffs could not be *terminated* except for cause. 18 N.Y.C.R.R. § 515.4(a). Likewise, plaintiffs have a property interest in the withheld payments which would preclude their *suspension* without due process of law. *See Kimani v. Perales*, No. 84–4068, slip op. (S.D.N.Y. October 30, 1984); *Pelini v. Blum*, 555 F.Supp. at 183; *Greenspan v. Klein*, 442 F.Supp. 860 (D.N.J.1977); *cf. Barry v. Barchi*, 443 U.S. 55, 64 n. 11, 99 S.Ct. 2642, 2649 n. 11, 61 L.Ed.2d 365 (1979) (suspension under state law "only upon proof of certain contingencies"). Again, this is because under state law, plaintiffs' suspension would be proper only upon proof of certain things. 18 N.Y.C.R.R. § 515.4(b). In this case, however, contrary to plaintiffs' characterization, defendant has neither terminated nor suspended plaintiffs' rights to the claims they have filed. *Siddiqui v. New York State Dep't of Social Services*, No. 8258–84, slip op. at 5–6 (Sup.

Ct.Albany Co. October 1, 1984). Rather, defendant has simply imposed an additional step in the verification process to be followed prior to payment of those claims. Once those claims have been properly verified by means of the pre-audit, defendant will pay them to plaintiffs.[10]

In order to succeed on its claim, therefore, plaintiffs must establish that they have a property interest in the immediate payment of their claims without prior verification pursuant to pre-audit procedure. This they have utterly failed to do.

It appears that under New York law, payment of these bills is required to be made promptly, but in no event more than twelve months after the services were rendered. *Siddiqui supra; Bay Ridge Diagnostic & Analytical Laboratory, Inc. v. Smith*, 71 A.D.2d 889, 419 N.Y.S.2d 638 (2nd Dep't 1979); 18 N.Y.C.R.R. § 302.1.

Furthermore, the pre-audit procedures applied to plaintiffs appear to be authorized by state law as long as they do not result in a delay in payment longer than the twelve months prescribed by 18 N.Y.C.R.R. § 302.1. Regulation 540.11 provides that "[t]he public welfare official shall establish internal practices that will safeguard the proper expenditure of funds for medical care." 18 N.Y.C.R.R. § 540.11. Regulation 540.8 provides that the public welfare official will verify bills received for medical assistance rendered. The pre-audit procedures attacked in this case have been found proper pursuant to those regulations and the general administrative duties imposed on the Department by N.Y.Soc.Serv.Law §§ 20, 34 and 363–a. *Siddiqui, supra.*

Accordingly, plaintiffs' property interest in the withheld payments is defined under state law as a right to receive payment on claims submitted for services rendered after verification or within twelve months of the rendering of those services, whichever is sooner. Defendant's conduct in this case appears to have in no way abridged that

---

**10.** If payment is not made upon verification, then that would be tantamount to suspension and self-help restitution, which require that the procedures outlined in 18 N.Y.C.R.R. Part 515 be followed.

property interest; therefore, plaintiffs have not shown a likelihood of success on the merits of their claim that defendant's conduct violated their due process rights or even that a fair ground for litigating that issue exists.

Thus, plaintiffs' motion for a preliminary injunction is DENIED.

SO ORDERED.