In the Matter of JOHN KARANJA, Doing Business as JOHN KARANJA PHARMACY and LARI PHARMACY, Petitioner, v CESAR A. PERALES, Individually and as Commissioner of the New York State Department of Social Services, Respondent.

Supreme Court, New York County, November 21, 1988

APPEARANCES OF COUNSEL

*Rosenbaum, Wise, Lerman & Katz* for petitioner. *Robert Abrams, Attorney-General (Lisa A. Kell* of counsel), for respondent.

## OPINION OF THE COURT

SHIRLEY FINGERHOOD, J.

By this CPLR article 78 proceeding, petitioner, the proprietor of a pharmacy, challenges the decision of the Commissioner of New York State's Department of Social Services (DSS) to terminate his participation in the New York Medicaid program. That decision was purportedly made pursuant to newly enacted regulations which require Medicaid providers to apply for reenrollment in the program (18 NYCRR part 504, eff Jan. 5, 1987).

Petitioner was accepted in the New York Medicaid program in November 1986, approximately six months after his retail pharmacy commenced operation at 3666 Broadway, and a substantial part of his business is related to Medicaid. He contends that DSS' termination was an abuse of discretion, arbitrary and capricious, and in violation of his constitutional right to due process. It is his position that he has a constitutionally protected property interest in continued participation in the program which cannot be abridged without notice and a hearing; and that as a provider he may be terminated only pursuant to 18 NYCRR part 515 which provides for termination (and suspension and other sanctions) only for cause after a hearing on specific charges.

DSS denies that there is a property right in continued participation in the Medicaid program. Somewhat disingeniously it explains that the standards and procedures applicable to termination are irrelevant to petitioner's case because "Part 515 deals with termination of already enrolled providers while Part 504 deals with applications for enrollment".

### FACTS

Medicaid is a medical assistance program jointly financed by the Federal Government and the States. Each State administers its individual program in accordance with Federal statute and regulations and the statutes and regulations of the State.

In this State, the program is administered by the respondent which notified petitioner in the latter part of 1987 that all Medicaid providers were required to reenroll by the newly enacted regulations and that failure to apply for reenrollment would result in automatic termination.

Petitioner complied and after a site visit by DSS he was informed that his status as a provider would be terminated because on the date of the visit, four violations of department regulations had been found. They were that (1) no pharmacist had been on duty for three hours; (2) a purchaser's name had not been entered on a prescription; (3) two outdated drugs were in the refrigerator; and (4) there was poor site accessibility to the handicapped. Petitioner was advised that he had the right to appeal by submitting "written arguments and documentation concerning any mistake of fact." His submission requesting appeal was denied on the ground that it did not concern mistakes of fact, and petitioner was informed that his status as a provider would be terminated on May 27, 1988.

THE REGULATIONS

## 1. 18 NYCRR 504

Section 504.10 requires providers enrolled prior to the effective date of the regulation to apply to reenroll on notice from DSS.* Section 504.5 sets forth criteria for denial. Subdivision (a) describes the various grounds: prior involuntary withdrawals or suspensions (para [2]); final decisions of overpayment without restitution "after an adjudicatory hearing" (para [3]); previous failure to correct deficiencies "after having received written notice of the deficiencies" (para [5]); concealment of ownership by an ineligible person (para [7]); an indictment for or conviction of a crime related to the furnishing of medical services or involving theft or fraud (paras [8], [10]); and a prior finding of having engaged in an "unacceptable practice" or

---

* Respondent does not state the purpose of requiring reenrollment of those already enrolled in the program. According to DSS, the majority of all providers, approximately 58,000, will be reenrolled routinely upon receipt of their completed application. Some 1,100 high-volume providers, including 392 pharmacies, are being subjected to an intensive enrollment process which "includes a review of the provider's pattern of practice and medicaid billings, completion of detailed questionnaires, and the performance of site visits." In view of Commissioner Nelson M. Weinstock's description of the agency's use of on-site inspections, undercover shoppers, and the fraud and abuse audit staff, the rationale for generating some 59,000 applications for reenrollment in order to review 1,100 high-volume providers is not clear.

having violated standards by program or licensing authorities (paras [9], [10], [11]).

■ None of the above are cited by respondent. DSS relies on an additional paragraph (18 NYCRR 504.5 [a] [13]), which speaks of "any other factor having a direct bearing on the applicant's ability to provide high-quality medical care, services or supplies * * * or to be fiscally responsible to the program". Although paragraph (13) may provide an appropriate standard for new enrollees, those without a track record in providing services and billing therefor, it is inappropriately used to sanction the deficiencies in issue here. It lacks "standards" that are adequately "explicit" to prevent "arbitrary and discriminatory enforcement". *(Grayned v City of Rockford, 408 US 104, 108.)* The vague language used contrasts unfavorably to the preceding subdivisions, all of which rely on a finding of fraud or misfeasance, the failure to cure after notification, or criminal charge or conviction, thereby inhibiting arbitrary or discriminatory rejections of applicants.

Accordingly, assuming, arguendo, that a previously enrolled provider may be required to reenroll and rejected for acts within 18 NYCRR 504.5 (a) (1) through (12), which are sanctionable only after notice and failure to cure or after convictions or formal determinations, DSS does not have the choice, at whim or worse, to give an applicant the opportunity to correct deficiencies after notice pursuant to paragraph (5) or to deny that opportunity by charging an "other factor" pursuant to paragraph (13). To permit the vague language "other factor[s] having a direct bearing on [petitioner's] ability" to be substituted for the more precise prior standards, would give DSS total discretionary power over enrollees.

## 2. 18 NYCRR 515

Section 515.3 requires that there be an agency finding of an "unacceptable practice" prior to the imposition of any sanction; unacceptable practices are defined (18 NYCRR 515.2) and only a limited number of those practices justify exclusion or disqualification from the program (18 NYCRR 515.4). Those do not include the deficiencies with which petitioner is charged.

Immediate suspension or disqualification, that is without the due process procedures provided by 18 NYCRR 515.6, may be imposed only pursuant to 18 NYCRR 515.7: when an accusatory instrument has been filed which charges a felony related to medical care, a provider may be suspended; when a provider is convicted of such a crime, it may be disqualified; a

provider may be terminated and suspended after the United States Department of Health and Human Services suspends or terminates the provider, when the public health or the health or welfare of a recipient of services is endangered, or when an administrative or judicial hearing proceeding results in a written decision that the provider has violated the rules and regulations of the Commissioner of Education or the Board of Regents.

As stated above, 18 NYCRR 504.5 (a) (13) was inappropriately applied in petitioner's case, and no other paragraph of the subdivision has been, or could be, appropriate. On the other hand, the purpose of 18 NYCRR part 515 is to impose appropriate sanctions for offenses such as those with which petitioner was charged. Accordingly, DSS exceeded its authority and was arbitrary and capricious in accomplishing the termination of petitioner's enrollment as a Medicaid provider by purportedly requiring and denying reenrollment pursuant to 18 NYCRR 504.5 (a) (13).

### THE CONSTITUTIONAL ARGUMENT

■ It is well settled that "Health care providers have a constitutionally protected property interest in continued participation in the * * * Medicaid program" *(Patchogue Nursing Center v Bowen,* 797 F2d 1137, 1144-1145 [2d Cir 1986], *cert denied* 479 US 1030 [1987]; *Case v Weinberger,* 523 F2d 602 [2d Cir 1975]; *Kashimiri v Perales,* 597 F Supp 495 [SD NY 1984]; *see also, ADL v Perales,* US Dist Ct, SD NY, Aug. 2, 1988, 88 Civ 4749). That property interest may not be terminated without due process of law. *(Board of Regents v Roth,* 408 US 564 [1972].)

In *Bowens v N. C. Dept. of Human Resources* (710 F2d 1015 [1983]) the court referred to State law in determining that a Medicaid provider had a property interest in participation in the program. That interest was found in the regulations providing for notice and a full evidentiary hearing before a committee which was required to make findings of fact and conclusions of law and recommendations of sanctions. The court stated *(supra,* 710 F2d, at 1018): "The regulations contain procedural and substantive guarantees that expressly limit the reasons for and means by which a provider may be terminated. The only plausible inference that can be drawn from them is that a provider's participation is not terminable at the will of the state. Consequently, we conclude that the

regulations create a property interest in continued participation in the program unless terminated for cause."

*Oberlander v Perales* (740 F2d 116 [2d Cir 1984]), upon which respondent relies, is distinguishable. Oberlander claimed entitlement to notice and a hearing on revision of the reimbursement rate. The Second Circuit held that a provider had no property interest in the reimbursement rate, a holding not inconsistent with its later statement that there was a property interest in provider enrollment. *(Patchogue Nursing Center v Bowen, supra.)*

Respondent also cites *Schwartzberg v Whalen* (66 AD2d 881 [2d Dept 1978]), in which the State agency termination of a nursing home was a ministerial act; the home had been terminated from the Federal Medicare program for failure to correct deficiencies and violations. The court noted that the home had no State rights separate from its Federal status.

Although the State may enumerate the conditions under which it will maintain contractual relations with a Medicaid provider *(Lang v Berger,* 427 F Supp 204), it may not revoke a Medicaid provider's license to participate in the program without the evidentiary hearing which is provided by 18 NYCRR part 515. See *Quinn v Syracuse Model Neighborhood Corp.* (613 F2d 438, 448 [2d Cir 1980]) where the court stated: "although the primary source of property rights is state law, the state may not magically declare an interest to be 'non property' after the fact for Fourteenth Amendment purposes if, for example, a longstanding pattern of practice has established an individual's entitlement to a particular governmental benefit."

For the reasons stated above, the application of 18 NYCRR part 504 to terminate petitioner's enrollment as a Medicaid provider is not only arbitrary and capricious and an abuse of discretion but is also an unconstitutional deprivation of his Fourteenth Amendment rights. Accordingly, the determination of the Commissioner of New York State Department of Social Services to disqualify petitioner from participating in the New York State Medicaid program is annulled.