Dr. H. Curtis BOWENS, Appellant,

v.

N.C. DEPARTMENT OF HUMAN
RESOURCES and Dr. Sarah
Morrow, Appellees.

No. 82–1329.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1982.

Decided June 23, 1983.

John Nockleby, Charlotte, N.C. (J. LeVonne Chambers, Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P.A., Charlotte, N.C., on brief), for appellant.

Steven Mansfield Shaber, Asst. Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen., Lucien Capone, III, Asst. Atty. Gen., Raleigh, N.C., on brief), for appellees.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Dr. H. Curtis Bowens, D.D.S., appeals from the district court's grant of summary judgment dismissing his claim against the North Carolina Department of Human Resources and its secretary, Dr. Sarah Morrow. For reasons different than those expressed by the district court, we affirm.

I

The state medical agency of the Department of Human Resources administers the North Carolina medicaid program pursuant to state and federal law. *See* 42 U.S.C. § 1396 et seq.; N.C.Gen.Stat. §§ 108A–54 to –65 (1981 Supp.); 10 N.C.Admin.Code ch. 26. Although the agency has overall responsibility for the program, various aspects of its operation are contracted out to private organizations. The Electronic Data Systems Federal Corporation ("EDS") is responsible for monitoring the quality and utilization of medicaid services. Medical peer review committees, composed of health care professionals appointed by EDS, review information gathered during the course of an investigation and make findings and recommendations to the agency. *See* 10 N.C.Admin.Code 26G.0601–.0602.

Dr. Bowens has provided dental services to medicaid recipients since 1970, and as a

participant in the program is required to abide by applicable rules and regulations. *See* 10 N.C.Admin.Code 26B.0202(a)(2). In 1976 the North Carolina Peer Review Foundation, the predecessor to EDS, began investigating his practice and subsequently referred his case to the dental peer review committee. On February 11, 1979, Dr. Bowens and his attorney met with the committee to review its findings. The committee submitted a memorandum to the agency in which it identified several concerns with his practice and recommended that his continued participation in the program be restricted.

Before final action was taken, however, Dr. Bowens and the agency entered into a settlement agreement, which provided that the agency would monitor his medicaid practice for 12 months, at which time a "follow-up review" with the committee would be scheduled. The agreement also stipulated that the committee's findings from the review would be sent to the agency for its final disposition of his case.

Dr. Bowens's practice was monitored from June 1979 to June 1980. Records of medicaid patients treated by him during this time were reviewed and summarized by Dr. Eugene Howden, D.D.S., a dental consultant to EDS. On April 26, 1981, Dr. Bowens and his attorney met with the committee. At the conclusion of this review, the committee made factual findings about Dr. Bowens's care of the patients whose cases it had examined. These findings were sent to the agency, which suspended Dr. Bowens from the medicaid program for three years beginning August 13, 1981, and placed him on a year's probation following his suspension.

Dr. Bowens brought this action under 42 U.S.C. § 1983, claiming that he had been suspended from the medicaid program without procedural due process. The district court adopted the magistrate's conclusion that Dr. Bowens did not have a property interest in continued participation and granted summary judgment in favor of the agency. We conclude that Dr. Bowens, in common with other dentists and physicians, has a property right under North Carolina

law. We also conclude that he received procedural due process and affirm the district court's judgment on that basis.

## II

Dr. Bowens contends that the state regulations governing peer review create an expectation of continued participation in the program absent termination for cause. The agency argues that because neither the state regulations nor a contract specifies the duration of a provider's participation, it is terminable at the will of the state.

The Supreme Court has ruled that property rights can be created by administrative regulations and that the "sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). In *Bishop,* 426 U.S. at 345, 96 S.Ct. at 2077, the Court interpreted a city ordinance under North Carolina law. It held:

> [A]n enforceable expectation of continued public employment in that State can exist only if the employer, by statute or contract, has actually granted some form of guarantee. *Still v. Lance,* 279 N.C. 254, 182 S.E.2d 403 (1971). Whether such a guarantee has been given can be determined only by an examination of the particular statute or ordinance in question.

The regulations on which Dr. Bowens relies, 10 N.C.Admin.Code 26G.0600–.0610, govern the peer review process. They establish the procedures which must be followed by the Peer Review Board ("committee") when cases are referred to it pursuant to "the development or investigation of a case involving overutilization or abuse of the medicaid program." Cases, like Dr. Bowens's, may be referred to it when "a question arises related to quality of care, medical necessity or appropriateness of care." § 26G.0601(a).

The regulations provide for notice and a full evidentiary hearing before the appropriate committee. Subsections .0610(e)–(g) require that the committee make findings of fact and conclusions of law, reach a final decision about whether the provider's care

is, by comparison to the care of other like professionals in North Carolina, inappropriate, unnecessary, or of unacceptable quality, and recommend appropriate disciplinary action. Only the agency has authority to impose sanctions, but these sanctions must be determined on the basis of the committee's findings, decision, and recommendations. § 26G.0610(h).

■ The language in subsections .0610(e)–(h), requiring that the agency base its final decision on the committee's findings, recommendations, and determination of cause, is mandatory. The regulations contain procedural and substantive guarantees that expressly limit the reasons for and means by which a provider may be terminated. The only plausible inference that can be drawn from them is that a provider's participation is not terminable at the will of the state. Consequently, we conclude that the regulations create a property interest in continued participation in the program unless terminated for cause.

Our conclusion is supported by EDS's interpretation of the regulations. EDS drafted the provisions adopted in 26G.0600–.0610, and in an introductory statement to its proposed guidelines it stated:

> The Peer Review Board hearing is the State's fair hearing in cases involving professional issues. There is no further appeal on these matters except to the appropriate court of law. Since the decision of the Peer Review Board on such matters is final and binding at the State level, it is extremely important that all hearings before the Peer Review Board be conducted in a manner which will afford "due process of law" to any party appearing before the Board. In order to protect the Constitutional rights of all parties, certain procedures must be fol-

lowed during the Peer Review Board hearing and during any pre-hearing conference.[1]

■ The agency argues, however, that even if the regulations give rise to a property interest they are not applicable to Dr. Bowens because his case arose before they were enacted. The agency also contends that the settlement agreement waived any property interest Dr. Bowens may have had. We cannot accept these arguments.

Although the regulations had not been enacted at the time the parties entered into the settlement agreement, they were in effect at the time of Dr. Bowens's follow-up review and suspension. The regulations contain no clause limiting their applicability to investigations initiated after their enactment. Indeed, the agency considered the regulations to be applicable. In its letter advising Dr. Bowens of the sanctions it was imposing, it stated that its action was taken "pursuant to the authority contained in the State Administrative Procedures Act, specifically, 10 NCAC 26G, and the provisions of the agreement signed by Dr. Bowens on May 31, 1979."

■ We also conclude that the agreement did not waive Dr. Bowens's property right. Although constitutional rights are subject to contractual waiver, the waiver "must, at the very least, be clear." *Fuentes v. Shevin,* 407 U.S. 67, 95, 92 S.Ct. 1983, 2002, 32 L.Ed.2d 556 (1972). The agency does not point to any contractual provision that relinquishes Dr. Bowens's right to be terminated only for cause and to have a hearing that affords him due process.

We therefore conclude that at the time of his suspension Dr. Bowens had a property right in continued participation in the medicaid program entitling him to be terminated only for cause.[2] Consequently, the pro-

---

1. "The Peer Review Board Hearing in North Carolina, Its Legal Authority, Operation and Procedures" at 2 (Sept. 21, 1979).

2. Only one other case pertaining to a physician's property interest in continued participation in the medicaid program has been brought to our attention. In *Greenspan v. Klein,* 442 F.Supp. 860, 861 (D.N.J.1977) (three judge court), the court assumed that a physician had a property interest and held that he was not

constitutionally entitled to a pretermination hearing; a prompt post-termination hearing satisfied the requirement of the due process clause.

Several cases have held that operators of nursing homes have a property interest in continued participation in the medicaid program entitling them to the protection of the due process clause. *See, e.g., Hathaway v. Mathews,* 546 F.2d 227, 229 (7th Cir.1976); *Case v. Wein-*

cedures to determine cause for his termination had to satisfy the requirements of the due process clause of the fourteenth amendment.

### III

The agency does not dispute that Dr. Bowens was entitled to a hearing prior to final agency action. The parties disagree, however, on the procedural format the committee was obligated to follow. The agency contends that pursuant to paragraph four of the agreement, the review did not have to be formal or meet the technical requirements of the regulations.[3] The agency also argues that the hearing met the requirements of due process even if it did not comply with the regulations.

Dr. Bowens claims that the agency was required to give him a formal evidentiary hearing in compliance with § 26G.0600–.0610. He contends that the follow-up review failed to comply with the regulations and thus was constitutionally deficient in the following respects: he received inadequate notice of the charges against him; witnesses were not sworn; he was denied an opportunity to present evidence; a committee member, Dr. Walter Linville, was biased; and the committee failed to interpret its findings or reach a final decision about the quality of his care.

Although the district court for the purpose of its judgment found it unnecessary to decide whether Dr. Bowens received due process, remand is unnecessary because the record does not leave unanswered material issues of fact or law.[4]

An agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process. *See United States v. Caceres,* 440 U.S. 741, 751–52, 99 S.Ct. 1465, 1471–72, 59 L.Ed.2d 733 (1979). When a property interest has been created, the due process clause, not state regulations, defines what process is constitutionally mandated. *See Arnett v. Kennedy,* 416 U.S. 134, 185, 94 S.Ct. 1633, 1659–60, 40 L.Ed.2d 15 (1974) (White, J., concurring & dissenting). At a minimum, due process usually requires adequate notice of the charges and a fair opportunity to meet them. *See Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976). The particulars of notice and hearing "must be tailored to the capacities and circumstances of those who are to be heard." *Goldberg v. Kelly,* 397 U.S. 254, 268–69, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970).

The following facts are undisputed: A month prior to the review, Dr. Bowens and committee members were provided with the names of patients whose cases might be discussed and with the summaries of their files prepared by Dr. Howden, the dental consultant to EDS. The hearing was postponed for a month at Dr. Bowens's request to allow him an opportunity to review this documentary evidence. At the hearing, Dr. Bowens was represented by his attorney. He also brought with him a professional colleague and three witnesses, only one of whom he presented, though he had been told he could present more. The committee reviewed the cases of approximately 20 of the 75 medicaid patients Dr. Bowens had treated during the monitoring year. Files, x-rays, and records on each of these patients were examined by all of the parties. Dr. Bowens was permitted to ask questions

---

berger, 523 F.2d 602, 606 (2d Cir.1975); *but see Geriatrics, Inc. v. Harris,* 640 F.2d 262, 264–65 (10th Cir.1981) (insufficient property interest to require a pretermination hearing).

3. Paragraph four of the agreement provides:
A follow-up review of Dr. Bowens' Medicaid practice by the Third District Dental Peer Review Committee will be scheduled at the termination of the twelve month monitoring period. The Peer Review Report of findings regarding Dr. Bowens' dental practice will be provided the State Medicaid Agency for their final disposition of Dr. Bowens' case.

4. Although the briefs on appeal dealt primarily with the question of a property interest, at oral argument the parties fully addressed the issue of due process. We have also had the benefit of their memoranda on this issue which they filed in the district court and reproduced in the appendix on appeal. Moreover, the district court tentatively considered the issue in its order denying a preliminary injunction. The court said: "In view of the solemn negotiated settlement of the parties of 9 May 1979 and the documented review that took place thereafter, plaintiff's plea of a denial of procedural due process is not persuasive."

of Dr. Howden and the committee, and he was afforded an opportunity to respond to questions asked of him. The meeting lasted for nine hours. At its conclusion, the committee made findings with respect to the patients whose cases it had reviewed.

■ Dr. Bowens's first claim fails because the notice he received was constitutionally sufficient. The patient summaries, together with the "charges" that had earlier been enumerated in the agreement, provided Dr. Bowens with adequate notice of the types of problems that would be discussed at the review and of the underlying facts and documentary evidence on which discussion would be based. *See Goldberg,* 397 U.S. at 267–68, 90 S.Ct. at 1020–21.

■ Second, Dr. Bowens was not deprived of due process by the committee's failure to swear witnesses. The "judicial model of an evidentiary hearing" is not a steadfast constitutional requirement. *See Mathews,* 424 U.S. at 348, 96 S.Ct. at 909. Moreover, Dr. Bowens does not allege that any of the witnesses perjured themselves, nor does he indicate how he was prejudiced by their failure to take oaths.

Third, the record does not support Dr. Bowens's contention that he was denied an opportunity to present evidence. Furthermore, in his response to the agency's motion for summary judgment, Dr. Bowens failed to allege what, if any, evidence had been denied admission.

■ In support of his fourth claim that Dr. Linville was personally biased and should have been disqualified as a committee member, Dr. Bowens primarily relies upon a letter written by Dr. Linville ex-pressing his disappointment with the settlement agreement. The agency has submitted Dr. Linville's affidavit denying personal bias and any attempt to influence other committee members. It also presented affidavits of five other committee members, all of whom deny knowledge of Dr. Linville's alleged bias or that he had an "untoward" influence on the committee's decision.[5]

An impartial decision maker is an essential element of due process. *Goldberg,* 397 U.S. at 271, 90 S.Ct. at 1022. An individual is not disqualified, however, because he has formed opinions about a case based on his or her participation in it. To be disqualifying, personal bias must stem from a source other than knowledge a decision maker acquires from participating in a case. *See United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

Dr. Bowens did not present any evidence suggesting that Dr. Linville's alleged bias stemmed from an extraneous source or that Dr. Linville conducted himself in a biased or impartial manner at the hearing. Accordingly, we conclude that this claim has no merit. *See Grinnell,* 384 U.S. at 583, 86 S.Ct. at 1710.

■ Dr. Bowens's final allegation is that the committee's findings and conclusions failed to comply with § 26G.0610(e)–(f) because the committee did not reach a final decision that his care was inappropriate, unnecessary, or of unacceptable quality. The agency contends that the committee's written findings adequately conveyed its decision that his care was of unacceptable quality.[6] It further argues that, consistent

---

5. On this issue, the district court in an earlier order made the following findings:
   [Dr. Bowens's] complaint that Dr. Walter S. Linville should have recused himself has no merit. A review of the record has convinced the court that letters about which plaintiff complains evince Dr. Linville's distress with the State agency in agreeing to the settlement in 1979 and not to any personal bias toward plaintiff.

6. The committee identified the following problems and the patients to whom they applied:
   1. There's a lack of mouth preparation before partial denture or denture insertion.

There are unrestored teeth and questionable abutment that are periodontally involved. There are restorations being done at time of or post-insertion. Curettage is being done at the time of insertion.
   2. There's a large percent of posterior immediate denture insertion.
   3. There's an unusual number of curettage procedures being done.
   4. There are a number of cases of teeth restored without radiograph evidence of inter-proximal decay.
   5. Office records are not consistent with radiographic findings.

with the terms of the agreement, the findings were sent to the agency, which determined that Dr. Bowens's care was unacceptable. In its letter notifying Dr. Bowens of his suspension, the agency stated:

> The justification for the suspension is based on the serious nature of the abuse (quality of care), the extent of the adverse impact the quality of care rendered had on the recipients, and the evidence that Dr. Bowens did not take the opportunity during the year-long monitoring program to make significant improvements in his quality of care in those areas where he was specifically found lacking.

It is unnecessary to remand this case to consider whether the agency correctly determined that the committee had concluded Dr. Bowens's care was unacceptable. Six of the eight dentists on the committee have submitted affidavits stating that their findings "showed professionally unacceptable dental work by Dr. Bowens."[7] Although the record discloses that two of the committee members did not agree,[8] there exists no genuine dispute about the conclusion reached by a majority of the committee. The regulations provide that all committee decisions must be made by majority vote. § 26G.0610(f)(2). The affidavits of six of the eight members definitively express the majority's conclusion.

In sum, we conclude that the regulations pertaining to participation in the medicaid program create a property interest under North Carolina law. Accordingly, Dr. Bowens was entitled to be suspended only for cause and to receive procedural due process. We affirm the district court's grant of summary judgment in favor of the agency because we conclude that the record discloses the procedures afforded Dr. Bowens met the requirements of due process.

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring:

I am quite prepared to assume but not to hold (it not being necessary), that the plaintiff had a property interest. A judge has frequent occasion to appreciate restraint by his predecessors, and their refusal to decide what need not have been decided. My concurrence is solely to reduce the possibility of unwieldly precedent should the question of what would constitute a constitutionally protected property right arise in the future in a context requiring resolution. I would fashion no unnecessary handcuffs for those who come after me.

In all events, however, I am satisfied that due process has not been denied and that the result reached by my panel colleagues is quite correct.

---

And the final comment comes from the original committee, from '79 which excludes three of these members. The original committee finds that there is no significant improvement in mouth preparation prior to denture insertion since the '79 review. That is the end of our findings.

7. The affidavits stated in part:

> The findings which we made showed professionally unacceptable dental work by Dr. Bowens on these patients. The twenty-two cases of Dr. Bowens' work which we examined closely were, in my opinion, adequate for us to make findings concerning the nature and quality of his dental work. The number and variety of problems which were identified by us in these cases were professionally unacceptable. I make this statement with the knowledge that some of the patient summaries indicated that the patients in these summaries had received proper dental care from Dr. Bowens.

8. A letter to the agency, written by one of the dissenting members with the concurrence of the other, criticized the procedures followed by the committee and the agency. The letter stated in part:

> I would like to know who interpreted the findings of fact that were given to the state agency? The facts certainly indicated a trend of practice, but all of the facts did not indicate a lack in acceptable quality of care. I tried to get this understanding [through] to you. . . . The statement, "failure to render acceptable quality care," is misleading. We did not say this, at least I did not.