**HEARING AND SPEECH CLINIC OF EVANSVILLE, INC., Appellant,**

v.

**INDIANA DEPARTMENT OF WELFARE, MEDICAID DIVISION, Appellee.**

No. 4–583A150.

Court of Appeals of Indiana, Fourth District.

July 26, 1984.

Paul D. Gresk, Lawrence, Carter, Gresk & Leerkamp, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary L. Shaw, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

The Hearing and Speech Clinic of Evansville, Inc. (the Clinic) sought judicial review of a determination by the Indiana Department of Public Welfare, Medicaid Division (the Department) that the Clinic was not entitled to payment for therapy performed on seventeen of its patients. The trial court upheld the Department's denial of payment, and the Clinic appeals, raising three issues: (1) whether the evidence was sufficient to support the Department's decision; (2) whether the Department's failure to give adequate notice denied the Clinic due process; and (3) whether the Clinic was denied a fair hearing, because the Department's hearing officer was biased against the Clinic.

■ The Clinic first argues that the evidence before the Department was insufficient to support its decision to deny the Clinic's claim for reimbursement. This decision was based on the Department's finding, under 470 I.A.C. 5–1–3.5(A)(4) (Supp. 1981), that "the claims were made for services ... determined by licensed medical staff of the state department as not medically reasonable and necessary ...." Under IND.CODE 4–22–1–18(5) (1982), the trial court could set aside this determination only if it was unsupported by substantial evidence. In light of this standard, we hold that the trial court properly found there was sufficient evidence to support the Department's decision.

■ The evidence before the Department's hearing officer included a Medicaid Provider Program Manual published by the Department. This manual delineated in detail what services the Department would pay for. As we have noted in the past, the guidelines in such manuals are entitled to great weight in determining whether services rendered were reasonable and neces-

sary. *Indiana Department of Public Welfare v. Crescent Manor, Inc.,* (1981) Ind. App., 416 N.E.2d 470. The manual set the following guidelines for speech and hearing therapies:

> Services by qualified personnel ... to improve and maintain functioning are reimbursable under the Medicaid Program.

> Rehabilitative (restorative) services must have definite goals and a generally predictable time period to achieve these goals.

> Services related to activities for the general good and welfare of patients, e.g., general exercises to promote overall fitness and flexibility and activities to provide diversion or general motivation, are not reimbursable.

> To be reimbursable under the Medicaid Program, therapy services must meet all of the following conditions:

> .     .     .     .     .

> 2. The services must be of such a level of complexity and sophistication or the condition of the recipient must be such that the judgment, knowledge and skills of a qualified therapist are required.

> .     .     .     .     .

> 4. The services must be considered under accepted standards of medical practice to be specific and effective treatment for the recipient's condition and must be deemed to be of medical necessity.

Applying these guidelines, two physicians testified that the services rendered to the seventeen patients at issue here were either purely educational, not medically necessary, or not so complex as to require the skills of a qualified therapist. This testimony constituted substantial evidence of probative value to support the Department's decision.

■ The Clinic argues that this testimony should be discounted because the Department's medical experts were not qualified as speech or hearing therapists and because their testimony was based solely on a review of the patients' records. The Clinic contends the Department should instead have believed the Clinic's witnesses, including the Clinic's proprietor—a therapist who had worked with the patients—and a speech pathologist who based her testimony on a review of the records. As the trier of fact, however, the Department was entitled to accept the testimony of its medical experts and discount the conflicting testimony of the Clinic's witnesses.

■ The Clinic also argues the Department was estopped to deny the Clinic's claims for payment, based on promises by the Department's agents that the claims would be paid. The record, however, contains little evidence that such promises were made [1] and no evidence that the Clinic reasonably relied thereon in treating the patients at issue. Thus, as the Hearing Officer found, there is insufficient evidence to support a claim of estoppel. *See State ex rel. Crooke v. Lugar,* (1976) 171 Ind. App. 60, 354 N.E.2d 755 (setting forth the elements of estoppel). The trial court properly found the Department's decision was supported by the evidence.

As its second issue on appeal, the Clinic argues it was denied due process because the initial notice it received that its claims were denied misled it as to the Department's reasons for denial. This initial notice, a letter from the Department's fiscal agent, said the claims were denied because "services provided did not relate to the recipients diagnosis(es) or symptom(s)" or "the number of services provided for this recipient exceeded Medical Policy." The Clinic contends this notice was so inadequate as to deny it due process, as the

---

**1.** The only evidence of any such promise cited by the Clinic was the following testimony of an Assistant Director of the Department:

Q: You conveyed in August of 19... er... Excuse me. ... in August 1979, at the initial meeting with the Taylors [the Clinic's owners], that if a physician prescribed the treatment and if he was properly monitored that payment would be made?

A: I probably said that, yeah. I can't recall for sure but it sounds reasonable.

reasons for denial stated in it were different than the reasons for denial raised before the hearing officer.

█ It is clear that a Medicaid provider seeking payment for services rendered may not be denied payment without due process of law, which at a minimum requires notice and an opportunity to be heard. *See Goldberg v. Kelly*, (1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; *Bowens v. N.C. Department of Human Resources*, (4th Cir.1983) 710 F.2d 1015 (discussing procedures for suspending provider from participation in Medicaid); *Illinois Physicians Union v. Miller*, (7th Cir. 1982) 675 F.2d 151 (discussing procedures for auditing Medicaid providers). Generally, notice that affords the recipient reasonable opportunity to prepare a response satisfies due process. 3 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 14.11 (2d ed. 1980). Further, it has been held that there is no due process violation if the party proceeded against understood the issues and had a full opportunity to make its case. *Golden Grain Macaroni Co. v. FTC*, (9th Cir.1972) 472 F.2d 882, *cert. denied*, (1973) 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144. Under this analysis, a Medicaid provider was held to have received adequate notice to prepare for a hearing on his suspension from the program where his communications with the Department before the hearing apprised him of the factual issues that would be raised. *Bowens, supra.*

█ In light of these cases, we find that the notice received by the Clinic was sufficient to meet the requirements of due process. Although the Department's initial notice to the Clinic was admittedly cryptic, the Clinic's owners later met with agents of the Department and discussed the denial of the Clinic's claims. The record shows that, in these discussions, the Clinic's owners were told the Department considered the services in dispute to be medically unnecessary or not covered under the Medicaid guidelines—the grounds upon which the Clinic's claims were ultimately denied. This meeting took place months before the hearing on the Clinic's claims. Thus, like the Medicaid provider in *Bowens, supra,* the Clinic had sufficient notice of the issues to prepare for the hearing. The Clinic was not denied due process.

█ Finally, the Clinic argues it was denied due process because the hearing officer who ruled on its claims was not impartial. Due process requires that those functioning in a quasi-judicial capacity be impartial. *Schweiker v. McClure*, (1982) 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1. It is presumed, however, that hearing officers are unbiased, absent "a showing of conflict of interest or some other specific reason for disqualification." *Id.* at 195, 102 S.Ct. at 1669. To prove its allegations of bias, the Clinic points out that the hearing officer here also served as a legal analyst and a supervisor for the Department. From this the Clinic would have us infer that the hearing officer had a professional interest in upholding the Department's initial decision to deny the Clinic's claims. The Clinic argues it was denied due process by the hearing officer's dual role as an adjudicator and a legal analyst for the Department. The only cases supporting this theory, however, involve hearing officers who also functioned as prosecutors or advocates within the agency, *Wong Yang Sung v. McGrath*, (1950) 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, or who, in the case to be decided, had represented one of the parties, *American General Insurance Co. v. FTC*, (9th Cir.1979) 589 F.2d 462, *City of Mishawaka v. Stewart*, (1974) 261 Ind. 670, 310 N.E.2d 65. The Clinic's evidence here, showing the hearing officer was also a legal analyst and a supervisor for the Department, does not prove the hearing officer had ever served as an advocate for the Department. Absent such evidence, we are not convinced the hearing officer's work within the Department biased him against the Clinic.

The Clinic also claims the hearing officer was biased because he received outside information about the case in the course of his work as a legal analyst for the Department. A leading case in this area is *With-*

*row v. Larkin,* (1975) 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712. In it, the Supreme Court found no per se denial of due process in an administrative procedure in which members of the Wisconsin Medical Examining Board were responsible both for investigating and adjudicating the cases of doctors charged with professional misconduct. The Court noted:

> The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances."

*Id.* at 55, 95 S.Ct. at 1468 (quoting *United States v. Morgan,* (1941) 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429). Accordingly, the Court held that an adjudicator's exposure to investigatory case materials would deny due process to the party under investigation only if "the special facts and circumstances present in the case [show] that the risk of unfairness is intolerably high." 421 U.S. at 58, 95 S.Ct. at 1470.

The record in this case shows that the hearing officer might have received some information from the Department's investigation of the Clinic's claims. Letters discussing two of the Clinic's claims were sent to the hearing officer in his role as a legal analyst. Further, there was testimony that the Clinic's case had been discussed at a staff meeting and that the hearing officer "on occasion" attended such meetings. The hearing officer, on the other hand, stated that he had never seen the letters discussing the case and that he had no prior knowledge of the case.

Clearly, however, even if the hearing officer did receive information gathered by the Department in investigating the Clinic's claims, that fact alone is insufficient under *Withrow, supra,* to prove that the hearing officer was so biased as to deny the Clinic a fair hearing. The hearing

officer here clearly had less exposure to case materials than the Board members in *Withrow,* who had conducted the investigation. Moreover, like the appellee in *Withrow,* the Clinic presented no evidence that, under the special circumstances of this case, "the risk of unfairness is intolerably high." Thus, the Clinic has failed to meet its burden of establishing that the hearing officer was biased. We find no denial of due process.

The trial court's decision to uphold the Department's ruling is affirmed.

CONOVER, P.J., and MILLER, J., concur.