**WEST PUBLISHING COMPANY, Petitioner,**

v.

**The INDIANA DEPARTMENT OF REVENUE, Respondent.**

No. 49T05–8704–TA–00018.

Tax Court of Indiana.

May 17, 1988.

Robert E. Johnson, Marc A. Hetzner, Krieg, DeVault, Alexander & Capehart, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

MILLER, Special Judge (Presiding Judge, Fourth District, Court of Appeals of Indiana).

West Publishing Company petitions for the refund of Indiana Gross Income Tax and Adjusted Gross Income Tax assessed on Indiana sales for the years 1971–1980. This court finds the Department of Revenue improperly assessed Adjusted Gross Income Tax for the period and, consequently, orders a refund of the Adjusted Gross Income Tax.

### FACTS

The court, having heard the testimony and viewed the evidence, enters its findings of fact:

1. Petitioner, West Publishing Co., is a Minnesota corporation with its main office located in St. Paul, Minnesota. None of West's production facilities are located in Indiana.

2. West neither owns nor leases real property in Indiana. It maintains no bank accounts, inventory or other personal property in Indiana.

3. West is a major publisher of legal reference materials. It sells case reporters, statutory compilations, and secondary research sources to customers within the State of Indiana.

4. West, during the period in question, used two methods to solicit sales: direct mail solicitations, which accounted for 80% of Indiana sales, and personal solicitations by two resident salesmen, which accounted for the remaining 20% of total Indiana sales.

5. During the relevant tax years, West employed two sales representatives in Indiana. West paid its sales representatives on commission and did not reimburse them for any business expenses other than phone calls to the home office. The sales

representatives were responsible for maintaining their own offices and office staff, if any.

6. The sales representatives earned commissions on all sales which they personally solicited, as well as on all sales in their individual territory which exceeded a specific minimum dollar amount. They received no commission for installments of ongoing series after the initial sale.

7. When soliciting sales, the representatives would fill out order forms. The forms asked for account number, customer name and address, date, and terms of the sale. The purchaser, or the individual authorized to purchase the books, would sign the order. The sales representatives would then forward the forms to West's home office. West conducted no C.O.D. transactions.

8. In some transactions involving new or inactive customers, West required a deposit check. In others, the sales representatives would forward a check as a courtesy to the customer. The deposit transactions accounted for approximately 8.15% of Indiana sales.

9. The home office checked the customer's credit and the orders before accepting or rejecting the order. The sales representatives had no power to accept or reject an order, including those few orders in which a customer refused to submit a required deposit.

10. In cases where the sales representative forwarded a deposit with the order, the deposit would not be cashed until the home office accepted the order. If the home office rejected the order, the check would be returned uncashed.

11. West extended credit terms to attorney customers. In preparing new orders, the sales representatives would customarily include information—in most instances provided by the customer—about outstanding balances on the customer's old accounts. This allowed West to merge the accounts if the customer so desired. The sales representatives could recommend

that West accept such mergers, but the recommendations were not binding on West.

12. If a sale were rejected by the home office, the rejection would be forwarded to the sales representative. The representative would then attempt to work out terms of sale with the customer which would be acceptable to West. Any resubmitted order would be subject to acceptance by the home office.

13. If a sale were rejected because of a past due balance on another account, the sales representative could suggest the old and new accounts be merged and submitted with terms acceptable to the home office. The home office would retain the right to accept or reject the new terms.

14. West handled all collection matters on past due accounts from its home office. In some cases, it would refer collection to outside agencies. The sales representatives did not handle collection efforts, and would only deal with past due accounts in soliciting new sales.

15. In two specific instances, West's sales representative, George Gossman, had some involvement with past due accounts. In the first of these instances, Gossman submitted an order for a customer who had a past due account. West asked Gossman to inquire if the customer would be willing to let West merge the accounts so that the order could be approved.

16. In the second instance, West informed Gossman that a sale to the Lake County Sheriff's Department could not be accepted until a small outstanding balance of $58.50—incurred by a previous sheriff—was paid or merged with the order. Gossman asked West if the old balance could be ignored and the new order processed as written.

17. When a customer received damaged materials, replacement would be handled through the home office.

18. In March 1979, the Department of Revenue requested a detailed description of West's business activities in Indiana. West

responded to the Department's request on April 10, 1979.

19. On April 18, the Department's examiner, Thomas Hunt, sent a letter to West in which he stated that West's response was sufficient to answer the Department's questions. The text of this letter is reproduced later in this opinion.

20. At the time he sent the letter, Hunt was classified as a Tax Examiner III. His duties included applying state and federal tax laws to resolve tax problems.

21. West did not pay the Indiana Intangibles Tax, Gross Income, or Adjusted Gross Income Tax for the fiscal years 1971–80.

22. In December 1980, the Department informed West that it intended to audit West's Sales and Use Taxes. West protested the proposed audit, but, on May 19, 1982, did supply the Department with additional information concerning the sales representatives' duties with regard to deposit checks.

23. On November 10, 1982, the Department informed its out-of-state Audit Supervisor that it was taking the position that West's sales representatives accepted deposits rendering West liable to Indiana tax.

24. On May 5, 1983, the Department completed its audit summary and sent a copy to West.

25. On August 22, the Department issued its Letter of Findings. The Department found that West was subject to Gross Income Tax and Adjusted Gross Income Tax, but was not subject to Intangibles Tax.

26. On August 21, 1984, State issued to West ten form CS–80s, Notice of Tax Due ("Assessments"), in the indicated respective amounts. Copies of the form CS–80s are as set forth below:

| TAX PERIOD ENDING | TAX | PENALTY | INTEREST | TOTAL |
|---|---|---|---|---|
| 7/31/71 | $ 2,401.80 | $ 240.18 | $ 2,672.96 | $ 5,314.94 |
| 7/31/72 | 2,278.63 | 227.86 | 2,398.72 | 4,905.21 |
| 7/31/73 | 6,580.85 | 658.09 | 6,534.11 | 13,773.05 |
| 7/31/74 | 6,226.47 | 622.65 | 5,808.67 | 12,657.79 |
| 7/31/75 | 5,975.27 | 597.53 | 5,215.82 | 11,788.62 |
| 7/31/76 | 9,673.78 | 967.38 | 7,861.88 | 18,503.04 |
| 7/31/77 | 16,154.42 | 1,615.44 | 12,162.65 | 29,932.51 |
| 7/31/78 | 16,572.71 | 1,657.27 | 11,221.38 | 29,451.36 |
| 7/31/79 | 16,662.72 | 1,666.27 | 9,949.31 | 28,278.30 |
| 7/31/80 | 20,864.86 | 2,086.49 | 10,785.04 | 33,736.39 |
| | $103,391.51 | $10,339.16 | $74,610.54 | $188,341.21 |

27. On November 20, 1984, West issued a check to the State of Indiana in the amount of $188,341.21.

28. On September 25, 1986, West claimed a refund for the amount of tax, interest, and penalties paid. The Department denied the refund on January 16, 1987.

29. On April 10, 1987, West filed its petition initiating this cause, which petition was filed not more than 90 days after the Department's denial of West's claims and less than three years after the claims were filed.

30. Jurisdiction of this action was conferred upon the Indiana Tax Court by IND. CODE 33–3–5–2 and 6–8.1–9–1, as West paid Indiana taxes and interest, timely filed its claims and timely filed its petition.

31. On February 5, 1987, the Department refunded to West $10,339.16, which represented the refund of penalties paid for the years here in dispute. The Department refused to refund any other portion of West's payment.

### DECISION AND DECREE

West seeks relief in two counts. In Count I, West asserts the Department is estopped from collecting either the Gross Income Tax or the Adjusted Gross Income

Tax because an agent of the Department had previously represented to West that it was not liable for either tax. In Count II, West claims federal law exempts it from payment of the Adjusted Gross Income Tax. The court now finds the alleged representations do not estop the Department from collecting the taxes at issue. However, the court further finds that federal law prohibits the Department from assessing the Adjusted Gross Income Tax upon West.

### A. Count I: Estoppel

West's estoppel theory hinges on an exchange of letters between Thomas Hunt, a tax examiner for the department, and Peter Gilligan, a representative of West. Hunt initially wrote West for information about West's business operations in Indiana in order to determine whether West was subject to Indiana tax. Gilligan, on behalf of West, responded with a letter in which he stated that West's activities in Indiana were limited to the solicitation of sales. Hunt's reply read as follows:

Dear Mr. Gilligan,

This letter is in acknowledgement of your reply to my correspondence of March 28, 1979.

The information which you have submitted has proved to be a sufficient answer to the question raised in my previous correspondence.

I would like to thank you for your cooperation in this matter.

Sincerely,

INDIANA DEPARTMENT OF REVENUE

Income Tax Division

/s/Thomas Hunt

Thomas Hunt

Tax Examiner

Corporation Income Tax Section

West asserts this letter stated that West was not liable for any Indiana Income Tax. This court cannot agree.

The court finds as a matter of fact that the letter does not purport to state that

West bore no tax liability. Hunt never explicitly stated that West was not liable, he merely stated that the information West supplied was sufficient to answer the Department's questions as to West's liability. It is true that the letter *could* be read as a statement that West was not liable, but the mere possibility that the Department made such a representation is not, in this court's view, sufficient to create estoppel.

 Estoppels against the state are disfavored. *See, Abner v. State* (1985), Ind., 479 N.E.2d 1254; *State ex rel. Agan v. Hendricks Superior Court* (1968), 250 Ind. 675, 235 N.E.2d 458, *rehearing denied* 250 Ind. 675, 238 N.E.2d 446; *Advisory Board of Zoning Appeals v. Foundation for Comprehensive Mental Health* (1986), Ind.App., 497 N.E.2d 1089. The state will not be estopped in the absence of clear evidence that its agents made representations upon which the party asserting estoppel relied. *See, e.g., Hearing and Speech Clinic of Evansville v. Department of Welfare* (1984), Ind.App., 466 N.E.2d 462; *In re Property Located at the Marriott Inn* (1983), Ind.App., 456 N.E.2d 444, *cert. denied sub nom Carson v. Indiana* (1985), 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380.

In *Marriott Inn*, the owner of some gambling devices seized pursuant to a warrant sought the return of the devices, in part because he claimed law enforcement officers had assured him he could operate the devices without fear of criminal prosecution. The court found no estoppel because:

... [t]he petitioners were never told the operation of the machine did not violate state gambling laws. Rather, the essence of the assurances was that the use of the machine would be an *acceptable level* of gambling in the community.

456 N.E.2d at 447 (emphasis in original). Similarly, in *Hearing and Speech Clinic*, the clinic argued the Welfare Department should be estopped to deny certain of the clinic's claims for payment for services because of representations allegedly made by

agents of the Department. The court found that, while the record did contain some evidence of such representations, the evidence was not sufficient to support an estoppel.[1] 466 N.E.2d at 465.

■ These cases compel this court to find the representations, if any, in Hunt's letter insufficient to estop the Department from assessing the taxes at issue. But, even if the representations were sufficient, this court could not find West has met its burden to establish the estoppel. In *State ex rel. Crooke v. Lugar* (1976), 171 Ind. App. 60, 354 N.E.2d 755, the court set out the elements necessary to establish an equitable estoppel against the government: 1) a representation or concealment of material facts; 2) made with knowledge of the facts; 3) and made to a party ignorant of the facts; 4) which was made with the intention that the other party would act upon it; and 5) which induces the other party to act. In *Hearing and Speech Clinic, supra,* the court refused to find estoppel in part because there was no evidence that the clinic relied on any representation which may have been made.

In *Fraternal Order of Eagles v. State Board of Tax Commissioners* (1987), Ind. Tax, 512 N.E.2d 491, *reversed on other grounds State Board of Tax Commissioners v. Fraternal Order of Eagles* (1988), Ind., 521 N.E.2d 678, this court refused to allow an estoppel where all of the elements had not been proven. The court noted:

> Petitioner's case for estoppel is flawed *insofar as there is no evidence that Petitioner, in reliance on the State's representations, has changed its position to its detriment or injury.*

512 N.E.2d at 495 (emphasis added).

Here, there is no evidence that West in any way changed its position in reliance on

Hunt's letter. This is not a case where West paid the tax and then, upon reviewing Hunt's letter, ceased paying. On the contrary, West paid no tax before receiving the letter, and, until the Department initiated the present proceedings, West paid no tax after receiving the letter. There is nothing which indicates that, but for the letter, West would have paid the tax. In short, West has totally failed to demonstrate reliance.

Because West has not shown the Department represented that West was not liable for the taxes at issue, or that West relied on any representation which may have been made, the Department is not estopped to assess the Gross Income Tax or Adjusted Gross Income Tax against West. The court, therefore, finds for the Department and against West on Count I.

## B. Count II: Federal Preemption

In Count II, West alleges federal law prohibits the Department from assessing the Adjusted Gross Income Tax against West. The court agrees.

Under the Federal Constitution, Congress has been given the power to enact laws regulating commerce among the states. U.S. Const. art. 1 § 8 cl. 3, cl. 18. Laws enacted by Congress pursuant to powers expressly granted by the Constitution are considered the supreme law of the land, and shall prevail whenever they conflict with state laws. U.S. Const. art. 6 cl. 2; *Maryland v. Louisiana* (1981), 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576; *Aeronautics Commission v. State ex rel. Emmis Broadcasting Corp.* (1982), Ind.App., 440 N.E.2d 700.

---

1. Courts of other jurisdictions have required clear proof of unambiguous representation before they will uphold an estoppel against the state. *See, City of Mendota v. Pollution Control Board* (1987), 161 Ill.App.3d 203, 112 Ill.Dec. 752, 514 N.E.2d 218 (fact that State Environmental Protection Agency issued city a permit to operate a water treatment plant did not amount to a representation that the city could violate a Departmental regulation governing such plants); *Chemical Bank v. City of Jamestown* (1986), 122

A.D.2d 530, 504 N.Y.S.2d 908 *appeal denied* 68 N.Y.2d 608, 508 N.Y.S.2d 1025, 500 N.E.2d 874 (under promissory estoppel analysis, court refused to find certain correspondence expressing the opinion that company had complied with grant requirements constituted clear and unambiguous promise that company would receive grant); and *City of Jefferson v. Eiffler* (1962), 16 Wis.2d 123, 113 N.W.2d 834 (evidence necessary to show estoppel must be clear and distinct).

Congressional power to regulate interstate commerce includes the power to regulate all activities affecting interstate commerce, including state taxation to the extent it affects interstate commerce. *North American Van Lines v. State Board of Tax Commissioners* (1984), N.D.Ind., 590 F.Supp. 311. Congress exercised its power to regulate state taxation of activities related to interstate commerce when it enacted Public Law 86–272, now codified at 15 U.S.C. 381–384 (1970).[2] This statute provides, in relevant part:

> No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:
>
> (1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and
>
> (2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solication are orders described in paragraph (1).

15 U.S.C. § 381(a).

There can be no question that this law prohibits state net income taxation of businesses whose sole activity in the state is solicitation of sales. Indeed, the Department does not argue that it can assess the Adjusted Gross Income Tax on such businesses, instead, the Department argues

that West's Indiana representatives were engaged in activities other than the solicitation of sales.

This is not the first time our courts have been faced with the question of what types of conduct constitute solicitation. The supreme court addressed the issue in *Department of Revenue v. Kimberly–Clark Corp.* (1981), 275 Ind. 378, 416 N.E.2d 1264. In *Kimberly–Clark,* the Department attempted to assess the Adjusted Gross Income Tax against a manufacturer of paper products. The manufacturer employed sixteen salespeople to represent it in this state. The salespeople maintained daily contact with a district office located outside Indiana. The manufacturer paid their salaries, supplied them with cars and office supplies, supplied them with brochures and samples, and reimbursed them for automobile expenses, motel expenses, and some entertainment expenses. The salespeople talked to both direct customers, who bought the manufacturer's products from the manufacturer, and indirect customers, who purchased the products from the direct customers. In order to increase sales, the salespeople occasionally would check inventories, check shelf facings, price products, and even place products on the shelves and set up displays.

The indirect customers would place their orders with the direct customers. The direct customers would either place their order with the manufacturer's main office, or would place the order with a salesperson who would forward the order to the main office. The salespeople could not approve or disapprove any order. The main office received the order, checked the order, checked credit, and either approved or rejected the order. It also received payments and handled all collection matters.

The main office set product prices, and the salespeople could not change the prices set by the main office. The salespeople

---

**2.** For an excellent discussion of the history and intended effect of Public Law 86–272, see Justice Manderino's majority opinion for the Pennsylvania Supreme Court in *United States Tobac-* *co Co. v. Commonwealth* (1978), 478 Pa. 125, 386 A.2d 471, *cert. denied* 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193.

forwarded all complaints to the main office, which handled all claims. Furthermore, it also arranged all sales promotions, special price offers, and advertising. Finally, the manufacturers had no inventory in the state, maintained neither offices nor bank accounts in the state, and rented no buildings or real property in the state.

The Department.argued that the manufacturer was removed from the protection of 15 U.S.C. § 381 because the salespeople engaged in three types of activities: 1) conveyance of information to customers concerning inventory conditions or delays in shipment; 2) verification of destruction of damaged merchandise; and 3) coordination of the delivery of merchandise for special promotions. The court first noted that it was not possible to ennunciate a general rule demonstrating solicitation from merchandising—non-solicitation—and further noted that each case must be judged on its own merits with particular emphasis placed upon a business' activities within the state. *Id.* 416 N.E.2d at 1268 (*citing Gillette Co. v. State Tax Commission* (1977), 56 A.D.2d 475, 393 N.Y.S.2d 186, *affirmed* (1978), 45 N.Y.2d 846, 410 N.Y.S.2d 65, 382 N.E.2d 764; *United States Tobacco, supra*). No one or two corporate activities performed in a casual or infrequent manner should operate to remove the exemption provided by the statute. *Kimberly–Clark, supra.*

■ Solicitation can include a variety of activities which are related to the eventual sale, and acts of courtesy rendered to a customer to facilitate a sale may properly be regarded as solicitation of the sale. In this case, the evidence clearly demonstrates that West was engaged in solicitation as defined by *Kimberly–Clark.* West's production facilities, editorial staff, and distribution system were located outside Indiana, and West maintained no offices, inventory, real property, or personal property in the state. While West did employ sales representatives in the state, most of West's sales in Indiana were generated through direct mail orders. These orders were obtained by means of direct mail advertising which originated outside the state. The orders were handled exclusively outside the state, and West conducted no C.O.D. sales.

West did employ sales representatives in Indiana. The sales representatives accounted for 20% of West's Indiana sales. They were paid on straight commission and received no reimbursements for business or office expenses. The sales representatives were without authority to accept any order or approve credit; all sales acceptance and credit approvals were handled at West's home office. The home office retained all authority in these matters. The sales representatives did not collect on past due accounts, although they occasionally considered such accounts in soliciting new sales. Again, collection work was the province of the home office.

Thus, the only activity of the sales representatives which is even arguably non-solicitous is the acceptance of deposit checks. This court concludes that, in this case, the acceptance of deposit checks was an aspect of the solicitation of sales. The sales representatives forwarded checks to West in a miniscule 8.15% of the transactions. The court finds that when they did forward deposits, they did so as a courtesy to their customers, in order to facilitate sales to those customers.

The Department alleges Gossman engaged in collection work on some past due accounts. The facts produced at trial lead this court to find that there were only two instances in which Gossman had anything to do with past due accounts. In both of these cases, he merely informed the customer that a present sale could not be approved unless the old balances were merged with the amount which would be due under the new sales contract. In these instances, his services amounted to nothing more than removing an obstacle to the sale. The evidence presented clearly establishes that West made every effort to bring its Indiana activities within the solicitation protections of 15 U.S.C. § 381. It is ap-

parent to this court that the Department is attempting to assign great importance to activities which were performed infrequently, if at all, in order to tax West. Such activities, however, do not justify the conclusion that West was engaging in unprotected conduct in Indiana.

The court, therefore, finds West's activities in Indiana were limited to solicitation of sales. West is consequently entitled to the exemption granted under 15 U.S.C. § 381(a), and the Department was not entitled to assess Indiana Adjusted Gross Income Tax on the sales for the fiscal years at hand.

THEREFORE, BE IT ADJUDGED, ORDERED, AND DECREED that petitioner, West Publishing Company, have and take nothing under Count I of its petition. However, be it also ADJUDGED, ORDERED, and DECREED that respondent, Indiana Department of Revenue, refund to the petitioner assessed Adjusted Gross Income Tax in the amount of $96,451.55, plus all interest attributed thereto.