**MUNCIE INDUSTRIAL REVOLVING LOAN FUND BOARD, Appellant– Plaintiff,**

v.

**INDIANA CONSTRUCTION CORPORATION, Appellee– Defendant.**

No. 27A02–9101–CV–19.

Court of Appeals of Indiana, Second District.

Dec. 30, 1991.

Rehearing Denied Jan. 29, 1992.

Ronald K. Smith, Muncie, for appellant-plaintiff.

H. John Okeson, Michael L. James, Baker & Daniels, Fort Wayne, for appellee-defendant.

SULLIVAN, Judge.

Muncie Industrial Revolving Loan Fund Board (Board) appeals the trial court's grant of summary judgment in favor of Indiana Construction Corporation (ICC).

We affirm.

Muncie presents several issues for our review, which we restate:

I.   Whether a government agency is estopped from pursuing collection of a perfected, unreleased security interest in accounts receivable from a third party, if the agency's representative indicated by letter to the third party that the agency would not seek collection of its interest in the accounts receivable?

II.  Whether the representative had authority to speak for the Board when he informed ICC that the City no longer wished to pursue its security interest in the funds owed by ICC to Creative Components, Inc.;

III. Whether the Board waived its claim against ICC by failing to pursue its claim in a timely fashion?

In April, 1986, the Board loaned funds to Creative Components, Inc. (Creative) from the Muncie Industrial Revolving Loan Fund (Loan Fund). The loan was to be repaid in nine months. The Loan Fund is a governmental fund source created by city ordinance and established for the purpose of making loans to local businesses in order to promote local industrial development. As collateral for its loan, Creative gave the Board a security interest in certain contract rights then held by Creative, including a March 26, 1985 purchase order issued to Creative by ICC.

The Loan Fund is administered by the Board. The Board's composition is defined by ordinance. Generally, an individual becomes a member in one of two ways: 1) he or she is chosen expressly to serve on the Board; or 2) membership on the Board is automatically conferred by virtue of holding certain designated positions or offices within the city government. One of the members of the Board was Patrick Murray (Murray), who served as Administrator of the Loan Fund, and who worked in that capacity with respect to the Creative loan. Murray was a member of the Board by virtue of his appointment as Director of Community Development.

In a January 8, 1987 letter, written on City of Muncie letterhead, Murray informed ICC Vice-President Harry Okeson (Okeson) that Creative was delinquent on its loan repayment obligations to the Loan Fund and advised that the Board would exercise its right to Creative's ICC accounts receivable. Murray signed in his capacity as Administrator of the Muncie Revolving Loan Fund.

In a March 23, 1987 letter, written on her own private letterhead, attorney Barbara Hines, in her capacity as Assistant City attorney, formally requested that ICC pay to the City of Muncie any monies due and owing Creative. The next contact with ICC regarding the Creative account was the following April 29, 1987 letter from Murray, written on City of Muncie letterhead:

"Dear Mr. Okeson,

Today, the Mayor of the City of Muncie and myself, met with representatives of Creative Components, Inc. This meeting was to reach an agreement on the disposition of an existing arrangement between the City and Creative Components.

The Mayor has stated that:

The City has no desire to continue to intervene in the private matters between Creative Components and their customers and therefore has no intention of pursuing any effort to incumber funds now due and payable to Creative Components.

Your cooperation in this matter has been greatly appreciated.

Sincerely,

/S/ Patrick Murray

Patrick Murray, Director

Community Development"

Record at 111.

ICC subsequently paid to Creative $100,000.00 on May 8, 1987 and $5,000.00 on November 25, 1987.

In a January 13, 1988 letter, the Board informed ICC that the April 29 letter did not accurately state the City's position with regard to the loan. The January 13 letter also stated that the Board would "make whatever efforts are necessary to secure collection of Creative Components' [sic] obligations, including collection of the accounts receivable." Record at 179. ICC refused to pay, citing the April 29 letter from Murray as the basis for its refusal.

The Board subsequently filed suit against Creative and ICC in an effort to recover Creative's unpaid loan obligation to the Fund. A default judgment was entered against Creative, which had not entered an appearance or filed an answer. ICC answered, alleging that the Board was estopped from demanding payment because of the April 29 letter from Murray. ICC then filed a Motion for Summary Judgment, which the court granted. The Board appeals the grant of summary judgment in ICC's favor.

■ The court of appeals stands in the shoes of the trial judge when reviewing grants of summary judgment. *Boucher v. Exide Corp.* (1986) 2d Dist. Ind.App., 498 N.E.2d 402, *trans. denied.* We must determine whether there exist any genuine issues of material fact and whether the trial court correctly applied the law, resolving any doubts in favor of the non-moving party. *Lavery v. Southlake Center for Mental Health* (1991) 3d Dist. Ind.App., 566 N.E.2d 1055.

## I. Estoppel

■ The court below granted summary judgment on the ground that the Board was estopped to assert its security interest after Murray disavowed it. Courts unanimously state, and the Board correctly notes, that estoppel is not applicable as against a government entity in the same way as against a private party. There is, however, a seeming lack of unanimity regarding the parameters of estoppel when it is applied to a government entity. The general rule is that the government cannot be estopped by the actions of public officials. *Samplawski v. City of Portage* (1987) 3d Dist. Ind.App., 512 N.E.2d 456, 459. If estoppel were widely available against the government in such situations, dishonest, incompetent, or negligent public officials and workers could damage the interests of the public. Indeed, the government itself might even be precluded from functioning. *Id.* However, this general rule has been subject to exceptions.

■ The elements of promissory estoppel are clear: the party asserting estoppel must prove: 1) that there was a promise 2) which the promisor should reasonably expect would induce action or forbearance of a definitive and substantial character, 3) and which does in fact induce such action or forbearance, and 4) injustice can only be avoided by the enforcement of the promise. *Woodall v. Citizens Banking Company* (1987) 4th Dist. Ind.App., 507 N.E.2d 999, 1000. In addition, the party asserting estoppel must prove that such reliance was to its detriment. *Hearing and Speech Clinic of Evansville, Inc. v. Indiana Department*

*of Welfare, Medicaid Division* (1984) 4th Dist. Ind.App., 466 N.E.2d 462. Most importantly, especially in claims of estoppel against the government, the seeking party must show that estoppel is not inconsistent with the public interest. *Cablevision of Chicago v. Colby Cable Corp.* (1981) 4th Dist. Ind.App., 417 N.E.2d 348. The public interest must be weighed and balanced as against the equities of the circumstances. *Id.*

■ In the instant case, with the Mayor's approval, Murray informed ICC via the April 29 letter. This letter constituted a promise on the City's part that it would not assert its interest in the Creative purchase order. The letter resulted from a meeting between the Mayor and representatives of Creative and although the letter was sent without the Board's authority, this fact was not known to ICC. It may reasonably be assumed that it was sent for the purpose of inducing, or at least permitting, ICC to pay its obligation to Creative without fear of liability to the Board, and the City should reasonably have expected that ICC would act upon the representation contained in the letter. In apparent reliance upon the veracity of the representation made in the letter, ICC did indeed pay its purchase order obligation to Creative and not to the Board. The aforementioned facts establish all four elements necessary for promissory estoppel. Moreover, it is beyond dispute that ICC's reliance and resultant payment was to its own detriment, inasmuch as it will be obligated to pay additional funds to the Board, unless the Board is estopped from asserting its interest.

■ Our research reveals that the public interest analysis cannot readily be reduced to a list of rules or elements. Rather, the analysis proceeds in a case-by-case fashion, with but a few considerations serving as broad boundaries. Estoppel may be permitted against a governmental entity when its application will not result in the unauthorized or unlawful use of public funds. *See, e.g., Cablevision, supra,* 417 N.E.2d 348. Estoppel has been permitted when the limitations upon government authority are not clear or when the government takes inconsistent positions at different stages of the same proceedings. Estoppel has not been permitted when public officials and private parties act contrary to well-defined statutory procedures. *See, e.g., Cablevision, supra,* 417 N.E.2d 348. It therefore seems rarely, if ever, is it in the public interest to estop the government from collecting statutorily-mandated funds, or from refusing to spend public funds contrary to statute or ordinance.

Although the instant dispute involves money, it is not a money dispute of a sort which courts heretofore have held precludes estoppel: it does not involve taxes or other revenues which are owed by virtue of statute or ordinance (*see, e.g., Indiana Board of Tax Commissioners v. Fraternal Order of Eagles, Lodge No. 255* (1988) Ind., 521 N.E.2d 678); it does not involve unauthorized expenditure of taxpayer's money (*see, e.g., Glaser v. Department of Public Welfare* (1987) 1st Dist. Ind.App., 512 N.E.2d 1128, *trans. denied* ); nor does it destroy the effect of a statute enacted to ·protect the public treasury (*see, e.g., Gaddis v. Barton School Township of Gibson County* (1929) 89 Ind.App 369, 164 N.E. 499). Moreover, we are persuaded that estoppel is not inappropriate in all other types of cases in which money and government are in juxtaposition. Accordingly, we conclude that the public interest will not be harmed, and indeed will be threatened in this case if the City (Board) is allowed to make material representations to a local business regarding the City's financial requirements with respect to that business in its contractual relationships and upon which representations the business relies, and is then allowed to change its previously stated position to the detriment of the business. Our determination is validated by the "public interest exception" [1] identified

---

**1.** To designate this as a separate category of exception is perhaps misleading. Our review of relevant Indiana law reveals that in virtually every instance in which courts have approved estoppel against the government, the public interest factor has been analyzed and found not violated. It is therefore more accurate to view "in the public interest" as an overarching re-

in *Advisory Board of Zoning Appeals of City of Hammond v. Foundation for Comprehensive Mental Health, Inc.* (1986) 4th Dist. Ind.App., 497 N.E.2d 1089, 1092, as well as by the "inconsistent position" exception identified in *Cablevision, supra,* 417 N.E.2d at 356.

We emphasize that our decision here does not confer a wide-ranging "power to bind" upon government officials who are without actual authority, but nonetheless bind the government by their unauthorized actions or representations. The law relative to governmental officials' power to bind the government via unauthorized acts is unchanged by our decision. Simply put, the instant decision fits within the parameters of the aforementioned public interest analysis, which is ample protection against the sort of harm that would result if all unauthorized acts were binding upon the government.

### II. Apparent Authority

■ The Board argues that, even if estoppel might be applicable, the grant of summary judgment was inappropriate because, *inter alia,* the question of whether Murray had the authority to speak for the Board in his April 29 letter remains at issue. The Board points out that Murray stated in his deposition that he did not discuss the letter with anyone else on the Board, and that he did not have the Board's authority to send the letter. However even assuming that Murray did not have actual authority to speak without Board approval, ICC's reliance upon the April 29 letter was not unreasonable.

The Board refers to an affidavit submitted by Lowell Williams (Williams), who was the chairman of the Board at all times relevant to this dispute, stating that all actions taken in administrating loans were permissibly undertaken only after a majority vote by the full Board. The Board further notes that no such vote was taken relative to the message contained in the April 29 letter, and thus, Murray sent the letter without actual authority. Equity, however, recognizes the doctrine of apparent authority. This doctrine is premised

upon the maxim that when one of two innocent parties must suffer loss as a result of the wrongful conduct of a third party, the loss should fall upon the one whose conduct created the circumstances which enabled the third party to perpetrate the wrong and cause the loss. *Grosam v. Laborers' International Union of North America, Local 41* (1986) 3d Dist. Ind.App., 489 N.E.2d 656, 658, *trans. denied.* This doctrine can only properly be applied when the party dealing with the agent reasonably believes that the agent is acting with authority. *Id.*

In the instant case, the Board designated Murray its "Loan Fund Administrator," and funnelled all of the Board's communication regarding the Creative loan through him. All of ICC's previous contact with the Board regarding the loan, except for the March 23 demand letter from City Attorney Hines, had been with Murray. Furthermore, the Board's designation of Murray as the Loan Fund Administrator carried with it the implication that he had the authority to express the Board's position as to such matters as were addressed in the April 29 letter. Therefore, the Board cloaked Murray with the authority to speak on behalf of the Board.

The linchpin of the Board's argument upon appeal is that the Board and the City were separate entities and that the City had no impact upon administration of the Fund. However, we conclude that no trier of fact could reasonably conclude upon these facts that equating the City with the Board for purposes of the Loan Fund was unreasonable. The two letters to ICC that were authorized by the Board gave rise to the unmistakable impression that the Board was the City's alter ego in administering the Fund. The January 8 letter was sent on City of Muncie (not Board) letterhead and was only identifiable as coming from the Board in one line in the body of the letter, and as reflected in Murray's title. The March 23 letter, also authorized by the Board, was sent by Attorney Hines on her own letterhead, signed in her capaci-

---

quirement which must be satisfied in any grant

of estoppel against the government.

ty as Assistant City (not Board) Attorney, and requested that ICC pay the City (not the Board). The only reference to the Board in this second letter was contained in one line in the body of the letter. Finally, any distinction between the City and the Board was completely obliterated in the April 29 unauthorized letter because it, like the January 8 authorized letter, was on City of Muncie letterhead and it was sent, also like the January 8 letter, by Murray. Based on the written communications and other contacts it had with the Board, all of which were with Murray, ICC's conclusion that for all intents and purposes the Board and the City were interchangeable, was not only reasonable, it was inescapable. Under these facts, ICC's reliance upon Murray's apparent authority to send the April 29 letter was reasonable.

It was within the trial court's prerogative to rule upon the summary judgment motion and to determine that the Board was estopped as a matter of law from pursuing its security interest against ICC.

Having upheld the trial court's grant of summary judgment upon the ground of estoppel, we need not address issue III.

The judgment is affirmed.

BAKER, J., concurs.

SHIELDS, J., dissents with opinion

SHIELDS, Judge, dissenting.

I dissent. Indiana Construction Corporation acknowledges Indiana courts have engrafted additional requirements onto the doctrine of estoppel when applying it to governmental act. One such requirement is that "the agent acting on behalf of the government must be acting within the scope of his authority, *Samplawski v. City of Portage* (1987), Ind.App., 512 N.E.2d 456, 459." Appellee's Brief at 9. ICC then asserts that Mr. Murray was acting within the scope of his authority when he sent the April 29, 1987 letter. In fact, the agent in this particular situation is the Mayor, not Mr. Murray. In the April 29, 1987 letter, Murray was reporting on the Mayor's statement, not his own: "The Mayor has stated that...." Record at 184. Thus the issue is whether ICC established the Mayor's actual authority to act on behalf of the Board as a matter of law. In my opinion, it did not.

The record reveals the Board was created by an ordinance of the legislative arm of Muncie, the Muncie City Council, and provides "[t]he board of directors shall have the sole power and authority to direct the administration of the fund account and shall act as the majority of its members shall decide." Record at 200. In seeking summary judgment ICC failed to address the issue of the Mayor's authority. For this reason the grant of summary judgment is erroneous. In addition, the judgment is erroneous because the reasonableness of ICC's reliance on the Mayor's representation, if authorized, would be a question of fact.

Alternatively, ICC argues the trial court's judgment should be affirmed because the Board's failure to pursue timely payment from ICC waived any rights the Board may have had to impose liability on ICC for wrongful payment. This argument is also unavailing because ICC failed to negate the existence of genuine issues of fact material to this equitable defense.

I vote to reverse the grant of summary judgment and remand the cause to the trial court for further proceedings.