**ACE FOSTER CARE AND PEDIATRIC HOME NURSING AGENCY CORPORATION, Appellant–Plaintiff,**

v.

**INDIANA FAMILY & SOCIAL SERVICES ADMINISTRATION, Division of Family and Children, Lake County Office, Appellee–Defendant.**

No. 45A03–0605–CV–202.

Court of Appeals of Indiana.

May 1, 2007.

Matthew J. Arnold, Ferngren Arnold & Busse, LLP, Valparaiso, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

*STATEMENT OF THE CASE*

Ace Foster Care and Pediatric Home Nursing Agency Corporation ("Ace"[1]) ap-

---

1. Throughout its brief, Ace refers to itself as "ACE." Because its initial complaint identified itself as "Ace....," (App. 20), we use that form.

peals the trial court's order that denied its motion for summary judgment in its lawsuit against Indiana Family and Social Services Administration, ("FSSA"), Division of Family and Children, Lake County Office; and granted judgment to FSSA; and dismissed Ace's claims.

We affirm.

## ISSUE

Whether the trial court erred when it granted judgment to FSSA and dismissed Ace's claims.

## FACTS

Ace was licensed by the State of Indiana as a licensed foster care placement agency. In November of 2003, it submitted to FSSA's Lake County Office of Family and Children ("LCOFC") a proposal "requesting that a contract be awarded" to Ace for it to provide placement services. (App. 222). On April 28, 2004, Ace filed a complaint against FSSA, asserting claims of breach of contract, promissory estoppel, and violation of constitutional due process. These claims were based on statements allegedly made to representatives of Ace by employees of FSSA. Ace also sought a preliminary injunction. On June 18, 2004, FSSA filed a motion to dismiss under Indiana Trial Rule 12(B)(6) and accompanying brief. On July 20, 2004, the trial court granted Ace injunctive relief. FSSA appealed that order, and our review led us to make the following findings of fact:

LCOFC contracts with various licensed child placing agencies ("LCPAs") to place children in foster care homes in Lake County. In 1999, Elliott Cunningham began working for the Lake County office of Mentor Network ("Mentor"), a national organization. Mentor, an LCPA, had a contract with LCOFC for foster care placement. In 2003, Cunningham left Mentor and founded Ace.

On June 11, 2003, Ace filed an application with FSSA for a license to operate a child placing agency. Thereafter, Ace began negotiating a lease for office space and paid deposits for office furniture and utilities. On November 1, 2003, Cunningham wrote a letter to Ace's prospective landlord apologizing for the delay in finalizing the lease and informing him that the license application was still pending; that Ace had been required to set aside $20,000 to guarantee funding for a three-month budget; that an FSSA licensing consultant had agreed to expedite the application process and was going to inspect the office space on November 6, 2003; and that after the inspection Ace would submit "a contract proposal" to the LCOFC. Plaintiff's Exh. 3. With the letter, Cunningham enclosed a revised lease "including a new start date of December 1, 2003" and a $900 deposit. *Id.*

On November 6, 2003, the FSSA licensing consultant notified Ace that its license application had been approved. On November 9, 2003, Cunningham wrote a letter to LCOFC Director Bruce Hillman informing him that Ace would be sending LCOFC "a child placement contract proposal" by November 17, 2003, and requesting that the proposal be approved "as soon as reasonably possible." Plaintiff's Exh. 4. Cunningham also informed Hillman that Ace could not "sign or commit to a lease for [its] office space until [LCOFC approved its] contract proposal" and that Ace had "several foster parents with foster children who are rather impatient and anxious to transfer their foster care license [from other LCPAs to Ace and] other foster parents, who call for a weekly progress report who are becoming very frustrated in not being able to transfer their license yet." *Id.* On November

17, 2003, Cunningham sent Hillman a "child placement contract proposal" for his "review and approval." Plaintiff's Exh. 1 (cover letter from Cunningham to Hillman).

On November 19, 2003, LCOFC attorney Eugene Velazco called Ace employee (and former Mentor employee) Frank Godinez regarding Ace's contract proposal. According to Godinez, Velazco told him, "It looks good. Things look okay. I don't see any problem with it right now." Tr. at 47–48. Godinez informed Cunningham of this conversation. Cunningham then called Velazco. According to Cunningham, Velazco stated that "he is the one that approves contracts" and that Ace "can start up January the 2nd, [2004,] as long as I have [Ace's] license in my hands[.]" *Id.* at 16. Cunningham told Velazco that Ace's license application had been approved and that he would give Velazco the license as soon as possible. According to Cunningham, Velazco stated, "You're good to go, . . . but remember, you have to have three months' expenditures [to] pay your foster care parents, your staff, your rent, your phone bills, you must have three months of cash available, because we will not pay you for three whole months." *Id.* at 17.

On December 5, 2003, Cunningham and Godinez delivered the license to Velazco. According to Cunningham, Velazco stated, "Okay, I have everything I need. You'll be good to go [on January 2, 2004]." *Id.* at 19. Cunningham told Velazco that he "would be entering into some contractual situations" and requested "something in writing." *Id.* at 20. Velazco explained that all LCPA contracts with LCOFC terminated on December 31, whereupon "everybody is under oral contract until Mr. Hillman signs approximately two to three months later." *Id.* Velazco told Cunningham,

"Once your children are transferred, you notify us and go through the process, and basically we have to pay you." *Id.* When Cunningham asked if he needed to know or do anything else, Velazco responded, "No, I'll inform everyone that you're good to go, and you can arrange your contractual agreements the way you see fit." *Id.* On December 15, 2003, Ace signed a five-year lease for its office space.

On or about December 19, 2003, Cunningham and Godinez met with two LCOFC employees to discuss foster families that had requested a transfer to Ace from Mentor. Cunningham provided the LCOFC with the requisite paperwork to transfer the families effective January 2, 2004. When Ace had not received transfer documents from Mentor as of January 5, 2004, Cunningham called Hillman. At a meeting on January 7, 2004, Hillman informed Cunningham that the LCOFC "could not go through with the contract." *Id.* at 26. According to Cunningham, Hillman stated that LCOFC could not go through with the contract because of a grand jury investigation and because "the county was broke." *Id.* At a subsequent meeting, Hillman told Cunningham "that there were too many agencies, and he was planning on cutting back on the amount of child care agencies." *Id.* at 28.

*Indiana Family & Social Services Admin., Div. of Family and Children, Lake County Office v. Ace Foster Care and Pediatric Home Nursing Agency Corp.*, 823 N.E.2d 1199, 1200–02 (Ind.App.2005) (footnotes omitted). After a hearing at which the above evidence was heard, on July 20, 2004, the trial court ordered FSSA to enter into a one-year contract with Ace. The trial court denied FSSA's motion to dismiss.

FSSA appealed the injunction order, and on March 8, 2005, we reversed. We found that because Ace had failed to establish "irreparable harm" for which there was no "adequate remedy at law," the trial court had abused its discretion when it granted injunctive relief. *Id.* at 1204.

■ Subsequently, on June 27, 2005, Ace filed a motion for partial summary judgment. Ace designated material[2] previously presented to the trial court and added the submission of the memorandum from FSSA approving Ace as a qualified entity for Title IV–E foster care reimbursement. According to Ace, the undisputed facts established that it was "entitled to a judgment of liability on each of its legal claims." (App. 36). FSSA's response argued that Ace's designated evidence failed to state a claim for breach of contract, or promissory estoppel, or a due process violation.

The trial court heard argument on Ace's motion for partial summary judgment on January 23, 2006. On February 15, 2006, based on "facts from the supplemental documents and the pleadings," the trial court denied Ace's motion for partial summary judgment. (App. 15). The trial court found "that I.C. § 4–13–2–14.2(a) requires all contracts with the state to be in writing," and Ace had adduced "no facts to show that a written contract was ever signed by the parties." *Id.* The trial court further found no "facts that would support a showing that [FSSA] received any benefit from" Ace. *Id.* In addition, the trial court noted "the general rule which exempts governmental entities from the application of the doctrine of promisso-

ry estoppel," and found that Ace presented nothing "to show the public interest would be threatened by [FSSA]'s conduct." (App. 16). Finally, the trial court found "insufficient facts" to "establish a denial of [Ace]'s right to due process under the law" because "[a]t best," the evidence showed that Ace had submitted an unsolicited offer, and FSSA's counsel "expressed the opinion that" Ace's proposal "appeared to comply" with standards and guidelines of FSSA's program; but that Ace's proposal "was rejected and no new vendors were accepted into the program." *Id.* The trial court noted that Ace had "not shown that 'Due Process' requires the acceptance of every proposal submitted to a government agency." *Id.* The trial court then entered judgment against Ace and dismissed Ace's lawsuit in its entirety, from which Ace now appeals.

## DECISION

### Standard of Review

We begin by noting that the trial court's order states that it is granting FSSA's "12(B) Motion to Dismiss all of [Ace]'s claims." (App. 16). However, the order also expressly states that the trial court had reviewed "the supplemental documents" submitted. (App. 15). Further, both parties referred to designated evidence as to Ace's motion for partial summary judgment in their written and oral arguments. Trial Rule 12(B) provides that a motion to dismiss for failure to state a claim *shall* be treated as a motion for summary judgment when "matters outside the pleading are presented to and not ex-

---

2. We note that the motion designates various "materials on which it relies for purposes of this motion" and asserts that "these materials ... should be in the court's record." (App. 26). Several of those—such as FSSA's answer to the complaint—are *not* included in Ace's Appendix. We remind documents des-

ignated to the trial court in a summary judgment proceeding should be Appendix in the appeal seeking review of the trial court's decision on that motion for summary judgement. *See Yoquelet v. Marshall County,* 811 N.E.2d 826 (Ind.Ct.App.2004).

cluded by the trial court." *See also Murphy Breeding v. West Central Conserv.,* 828 N.E.2d 923, 926 (Ind.Ct.App.2005). Both parties were provided a reasonable opportunity to present external material and to respond to the arguments made. Therefore, we review the trial court's order as one granting summary judgment to FSSA. *See Murphy Breeding* at 927.

Summary judgment is appropriate only if the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The party appealing a grant of summary judgment bears the burden of persuading us that the trial court erred. *Id.* If the trial court's entry of summary judgment can be sustained upon any theory or basis in the record, we must affirm. *Id.*

### Breach of Contract Claim

As the trial court correctly noted, the legislature has provided that all contracts with the State must be in writing. ("a contract to which a state agency is a party must be in writing." I.C. § 4–13–2–14.2(a)). The trial court further found that Ace presented "no facts to show that a written contract was ever signed by the parties." (App. 15).

■ Ace's argument in this regard is that its complaint made "both written and oral contract claims." Ace's Br. at 9. Ace then notes its submission of "a detailed written offer" to FSSA, and that FSSA responded with a "promise" that it would compensate Ace in the same fashion as all other placement providers. *Id.* at 10. However, to support its evidence in support of the latter assertion, Ace cites to the deposition testimony of LCOFC Director Hillman describing how the licensed foster placement agencies with which LCOFC contracted were compensated on a per diem basis. Even viewed in the light most favorable to Ace, Hillman's testimony does not constitute a "promise" to Ace that LCOFC would provide to Ace "the standard per diem compensation under the identical contracts issued to all licensed placement agencies," as Ace suggests. Ace's Br. at 10. Despite what seems to be an evidentiary gap in that regard, we construe Ace's argument as being that its proposed written offer and various oral responses from certain employees of LCOFC combine to evidence a contract that complies with the statute. Ace provides no authority for this proposition, and we cannot agree.

The statute is clear and unambiguous. In order to have a valid contract with a state agency, it "must be in writing." I.C. § 4–13–2–14.2(a). Arguably, the legislature envisioned circumstances such as those here, and acted to deter claims that oral promises could give rise to binding legal State obligations. Therefore, given the clear and unambiguous language of the statute, Ace's arguments that various conversations and practices created a material issue of fact as to whether there was a contract here must fail.

■ In its reply brief, Ace asserts that our opinion that reversed the preliminary injunction granted by the trial court "found no fault with the viability of Ace's legal theories" and, therefore, "implicitly" decided that Ace stated viable claims. Reply at 3, 5. Accordingly, it argues, we must reverse the trial court's instant order under the law of the case doctrine. As quoted by Ace,

Under the law of the case doctrine, an appellate court's determination of a legal issue is binding both on the trial court on remand and the appellate court on a subsequent appeal, given the same case with substantially the same facts. All issues decided directly or implicitly in a

prior decision are binding on all subsequent portions of the case. The doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided. The doctrine is based upon the sound policy that when an issue is once litigated and decided, that should be the end of the matter.

*Humphreys v. Day,* 735 N.E.2d 837, 841 (Ind.Ct.App.2000) (internal citations omitted).

The only "legal issue" decided in the prior decision was "whether the trial court abused its discretion in granting the injunction." *Ace,* 823 N.E.2d at 1200. We noted that if Ace had failed "to prove any one or more" of *four requirements,*

> 1) whether the plaintiff's remedies at law are inadequate thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; 2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of injunction may inflict on the defendant; and 4) whether, by the grant of the preliminary injunction, the public interest would be disserved,

then the grant of a preliminary injunction by the trial court would be an abuse of discretion. *Id.* at 1203–04. We then concluded that Ace had failed to prove that money damages would be an inadequate remedy. Because Ace's failure to prove that specific requirement was dispositive, our analysis did not consider whether any other requirements had been proven by Ace. Therefore, our prior decision did not determine that Ace stated "viable claims for relief," Reply at 5, and the doctrine of law of the case does not require that we reverse the trial court's order.

*Promissory Estoppel*

The trial court's order noted "the general rule which exempts governmental entities from the application of the doctrine of promissory estoppel," and found that Ace had "neither submitted nor alleged any facts that would establish" that "the public interest would be threatened by Defendant's conduct." (App. 16).

 Ace first argues that "promissory estoppel does *not* require a showing that the public interest would be threatened." Ace's Br. at 11. This is true. As our Supreme Court stated in *Brown v. Branch,* 758 N.E.2d 48, 51 (Ind.2001), promissory estoppel "is a judicial doctrine sounding in equity." Specifically, promissory estoppel

> encompasses the following elements: (1) a promise by the promissor; (2) made by the expectation that the promise will rely thereon; (3) which induces reasonable reliance by the promise; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise.

*Id.* at 52.

 The trial court's reference to Ace's failure to show that FSSA's conduct would threaten the public interest was simply another way of stating that "injustice can be avoided only by enforcement of the promise" because to *not* disallow such conduct by FSSA would threaten the public interest. The doctrine of promissory estoppel is part of the "concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct." *Brown,* 758 N.E.2d at 52. Therefore, the trial court's phrasing of the element does not render its judgment inconsistent with application of the doctrine.

Ace also asserts that with respect to a government entity, promissory estoppel is applicable when the party seeking shows "that estoppel is not inconsistent with the public interest." Ace's Br. at 11 (quoting *Muncie Industrial Revolving Loan Fund Board v. Indiana Construction,* 583 N.E.2d 769, 771 (Ind.Ct.App.1991)). Ace cites evidence indicating a positive reaction by LCOFC employees to what Ace proposed to offer, and that there was a need for foster care placement. Ace then argues that "for the public good," it should be contracted with to provide services, and that "the public interest will be harmed" if FSSA does not contract with it in accordance with its proposal. Ace's Br. at 13, 14. Thus, Ace's argument seems to be that pursuant to *Muncie Industrial Revolving Loan Fund Board v. Indiana Construction,* 583 N.E.2d 769 (Ind.Ct.App. 1991), the determinative factor is whether imposing a contractual obligation here is "consistent with the public interest." Therefore, we turn to *Muncie.*

In *Muncie,* the Revolving Loan Fund Board of the City of Muncie had a security interest in a debtor's accounts receivable. A Board member sent a letter that said the Board no longer wished to pursue its security interest. Nine months later, the full Board wrote the debtor that the earlier letter did not accurately state the Board's position. We found that the evidence had established that the Board member who sent the first letter was the Board's designated "Administrator of the Loan Fund," 583 N.E.2d at 770, that the first letter was "written on City of Muncie

letterhead," *id.,* and that "all of [the debtor']s previous contact with the Board" except for the letter from the full Board had been with the single Board member. 583 N.E.2d at 770, 773. Therefore, we held, the single Board member had apparent authority to represent the Board, and the Board was estopped from denying the representations in the first letter—from the single Board member.

▆▆▆ Apparent authority refers to a third party's reasonable belief that the principal has authorized the acts of its agent. *Menard, Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind.2000). It arises from the principal's indirect or direct manifestations to a third party and not from the representations or acts of the agent. *Id.* According to the evidence presented, only the director of LCOFC, Hillman, had the authority to enter into contracts on behalf of FSSA. Ace presented no evidence that Hillman had indicated that said contract authority had been delegated to LCOFC's attorney, Velazco, whose statements are referenced by Cunningham and Godinez. Both Cunningham and Godinez had significant past experience working with LCOFC. Cunningham submitted Ace's application directly *to Hillman.* Based upon the lack of *any* evidence upon which Ace could have reasonably relied as having constituted acceptance by LCOFC of Ace's offer, the trial court did not err in concluding that promissory estoppel was not applicable to this governmental entity in these circumstances.[3]

---

**3.** We note that our Supreme Court has recently emphasized that estoppel "is not generally applicable against governmental entities for the action of public officials." *Biddle, et al. v. BAA Indianapolis LLC,* 860 N.E.2d 570, 581 (Ind.2007). It quoted Judge Garrard's statement in *Samplawski v. City of Portage,* 512 N.E.2d 456, 459 (Ind.Ct.App.1987), that

[if] the government could be estopped, then dishonest, incompetent or negligent public officials could damage the interests of the public. At the same time, if the government were bound by its employees' unauthorized representations, then government, itself, could be precluded from functioning. *Biddle* at 581.

In its reply, Ace argues that FSSA's appellate argument only disputed certain estoppel elements, and thus, it conceded "that Ace can establish" some estoppel elements. Reply at 13. Ace is mistaken. FSSA stated that Ace "has not proven the factors" of promissory estoppel as defined in *Brown*. FSSA's Br. at 13. Moreover, as the party appealing the grant of summary judgment to FSSA, it is Ace's burden to persuade us that the trial court erred when it found that FSSA had shown that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law on Ace's promissory estoppel claim. *See Murphy Breeding*, 828 N.E.2d at 926.

### Due Process Violation

Finally, Ace argues that because FSSA "withdrew its contract and its promises" to Ace "without providing notice and an opportunity to be heard and without identifying or utilizing any uniform standard applicable to such action," Ace has "presented unrefuted evidence creating a genuine factual issue on the merits of its due process claim" against FSSA. Ace's Br. at 15. Again, we cannot agree.

At the outset, we note that the trial court essentially found, and we agree, that there was no legal contract between the parties. Specifically, the trial court found "no showing of a contract that was administered without standards and guidelines," but that "[a]t best," the facts showed Ace's "unsolicited offer was received by the agency and reviewed by the agency's in-house counsel who expressed the opinion that the contract appeared to comply with the standards and guidelines" of the program for which the proposal was submitted; that the "proposal was rejected and no new venders were accepted into the program"; and that Ace had "not shown that 'Due Process' requires the acceptance of every proposal submitted to a government agency." (App. 16).

Ace cites to *White v. Roughton*, 530 F.2d 750, 753–54 (7th Cir.1976), as requiring "written standards and regulation" in order "to ensure the fair and consistent application of eligibility requirements" in the administration of government programs. However, *White* concerned a general assistance program that provided food orders and rent for those in need. There is no evidence in the record to show that an application for a contract to provide foster care placement services is analogous to one for general assistance. Hence, *White* is inapposite.

Further, as FSSA observes, there is no dispute that when properly licensed, Ace was qualified—*i.e.*, eligible for consideration as a provider. However, as the trial court observed, Ace has failed to show that "Due Process" requires that a contract must be awarded to every qualified applicant that submits a proposal to provide placement services. Moreover, given the undisputed facts that Ace's proposal was unsolicited, and that for the year 2004, LCOFC simply extended its contractual relationship with qualified existing providers, we cannot conclude that the trial court erred when it found that Ace had not shown a material issue of fact and that FSSA was entitled to judgment as a matter of law on Ace's violation of due process claim.

Affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.